Peck & Co. v. Merrill and Trustees.

---

J. &. J. H. PECK & Co. v. JOHN MERRILL, AND R. PAGE, N. LOVEWELL, M. SAWYER AND G. TAPLIN, TRUSTEES.

*Assignment. Statute of* 1843. *Trustee Process.*

The act of 1843, prohibiting general assignments, should be construed so as to be confined to such transfers of property as are made in trust for creditors.

And a transfer by a debtor of all his property does not make of itself what is termed a general assignment,-unless it also be conveyed to trustees, to be held by them in trust for other creditors.

And if a debtor conveys his property directly to creditors or sureties for their benefit, and no trust is created for others, the transfer must then be regarded as a mortgage or pledge of personal property; and in such case, the creditor or surety cannot be held as the trustee of the debtor, unless there is a surplus left in his hands, after discharging his claim against or liability for the debtor.

Questions arising as to the manner, in which the disclosure of the trustee was obtained, or in which the examination was conducted, as well also as the motion to recommit, are matters resting in the discretion of the county court, and are not revisable on exceptions.

BOOK ACCOUNT, in which the said Page, Lovewell, Sawyer, and Taplin, were summoned as the trustees of said Merrill, the principal debtor. The book account between the plaintiffs and defendant, Merrill, was referred to an auditor, who returned a re-

port in favor of the plaintiffs, and judgment was rendered thereon, according to the report, for the plaintiffs.

At the June Term, 1853, of the Orange County Court,—COL-LAMER, J., presiding,—before the hearing between the plaintiffs and trustees was commenced, it was shown to the court by the plaintiffs, that at the first meeting of the parties before the commissioner, who had been appointed to take the disclosures, which meeting was June 1, 1851, an examination of the trustee, Page, was commenced by plaintiffs, and the commissioner wrote down his statements, given in answer to the plaintiffs' interrogatories. After proceeding a time in the examination, it was ascertained that he could not complete the disclosure until examination of books &c., by the trustee had been made, and therefore a continuance was taken, that the trustee should prepare and present a general disclosure, with schedules and accounts showing the state of his trusts. At the next meeting before the commissioner, he presented the disclosure on file, and signed by J. W. D. Parker as his counsel, and thereupon the examination by the plaintiffs proceeded. The plaintiffs' counsel insisted that said first proceeding should be returned by the commissioner as part of the examination, but the trustee, Page, declined to make oath to the said first part of his examination ; and the commissioner expected and intended to return the same, but the same has not been found or returned by him. The plaintiffs moved to suppress the whole proceeding, reported by the commissioner. The court overruled the motion, to which decision of the court the plaintiffs excepted.

The court then proceeded with the hearing upon the disclosures which were returned by the commissioner, and given by the trustees severally, and the exhibits, vouchers, books, &c, therein referred to, and found the facts in the disclosures as therein stated, and *pro forma* adjudged that the trustees were not chargeable, and dismissed them.

The plaintiffs excepted to the decision of the court so finding the facts, and adjudging the trustees not chargeable and dismissing them.

(The trustees disclosed that the property transferred and conveyed to them by the principal debtor was transferred and conveyed directly to them, for indebtedness to them, and to secure them for liabilities incurred as sureties for the said principal debt-

or, and nothing would be left in their hands, after discharging his liability and indebtedness to them.)

The court also allowed exceptions of the plaintiffs, at the January Term, 1853, taken to a judgment of the court, overruling an objection to the acceptance of the disclosures, which were returned by the commissioner.

The said Merrill, in his assignment to the said trustees, after setting forth that the goods in the store in Corinth, have been attached, and that said trustees had signed certain notes, as sureties, &c., proceeds: "now to secure them for their said liability, I "hereby turn over and deliver to them, by these presents, for the "benefit of all and each of them, at their free disposal, all "my property and interest in said goods and merchandize, at E. "Corinth, subject to said attachments, and also all the goods, "wares, and merchandize, in the store at South Bradford, of ev-"ery name and sort;" and after directing the receiptors and his clerks to deliver over the same to the said trustees, the assignment concludes as follows : "for the purposes herein declared, free "from any claim or demand of mine.    Aug. 9, 1851."

The said Merrill also, for the same purpose transferred his notes and accounts, and mortgaged his real estate to said Page, Lovewell, Sawyer and Taplin.

*W. W. Peck* and *R. McK. Ormsby* for plaintiffs.

The assignment was void under the statute of frauds.    Comp. Stat. 548 § 23 ; and under the act of 1843, against general assignments.

*First,* it is void under the statute of frauds.

1. The statute embraces two classes of contracts as fraudulent ; that in which the fraud is one of moral intent, fraud in fact; and that in which the fraud is one only of legal construction, fraud in law.    The present case belongs to the latter class.

2. An assignment which creates a trust for the assignor or empowers the assignee to sell on credit, is invalid.    The trust by reserving to the assignor control over any portion of the property, so far perverts it from its appropriate office.    It is immaterial whether the reservation be of a specific portion or of the residuum; or if of the latter, whether it be a general reservation or expressed to be for uses to be declared thereafter.

The power to sell on credit hazards a waste of the fund, and enables the assignee, indefinitely and at will to defer the time of payment. Each tends to avoid satisfaction of debts, and thus debts themselves. *Again,* as a contract, the validity of which depends upon the statute of frauds, and which is disfavored by law, it must upon its face, *affirmatively and clearly* show itself clear of the statute. No presumptions will be made in its favor. If open to a dubious interpretation, every intendment will be made against it.

3. The present assignment was made under insolvent circumstances.

While the real and personal property were under attachment, Merrill mortgaged the one, and transferred the other with his notes and accounts to the trustees, to secure them as his debtors and sureties, and with power to convert the personal property into cash, and apply it in payment of the debts, on which they were so liable. The transfers are to be treated as one transaction, and its import *prima facie* is, that the property was not available to him in his own hands, for the payment of his debts; therefore that he was in " insolvent circumstances."

4. The assignment of Aug. 9, 1851, was more than a pledge. A transfer leaves in the pledgor the general property of the thing pledged, and confers upon the pledgee a possessory title alone, the power of detention until performance of the obligation without the power of disposition.

*Again,* the power of unrestricted disposition or sale is *ex vi termini,* a power to sell on credit, because it *embraces* that power; but an authority to *sell only for cash*-would not be an unrestricted power of sale. A different construction would be a direct violation of the import of the instrument.

It is not necessary in order to vitiate the transfer as one containing the power to sell on credit, that the authority be conveyed in terms. It is the *power itself* not the *form in which it is conveyed,* which raises the objection under the statute. That, as a statute of frauds looks *behind the form to the substance,* otherwise it could always be evaded by the mere choice of language.

The following authorities show that it is sufficient if the power *has in fact been conveyed. Hopkins* v. *Roy et al. & Trustee,* 1 Met. 79. *Neally* v. *Ambrose & Trustee,* 21 Pick. 185. *Nicholson*

. *et al.* v. *Leavitt et al.,* Hunt's Merch. Mag., Nov. 1853. *Meach-am* v. *Stearns,* 9 Paige. *Woodburn et al.* v. *Mosure et al.,* 9 Barb. 255.

The present case is in substance the same as *Woodburn* v. *Mo-sure.*

In the present case a full or unrestricted power of sale, is a power to sell *whenever they shall choose to ;* hence to defer selling indefinitely. *Barney* v. *Griffin,* 2 Comstock 365.

The assignment creates a trust for the benefit of the assignor. An assignment for a part only of the debts, containing simply the power of sale, necessarily creates a trust for the assignor. *Dana's Admr.* v *Lull,* 17 Vt. 393. *Grover* v. *Wakeman,* 11 Wend. *Goodrich* v. *Downs,* 6 Hill 438. 2 Kent's Com. 533, 536, and notes.

The counsel, among other things, insisted, that the trustees could not charge the property for expenses or services. And cited upon points raised in argument, *Hyslop et al.* v. *Clark et al.,* 14 Johns. 458. *Briggs* v. *Murray,* 2 Johns. Ch. 5 Johns. Ch. 328. 11 Wend. 187. *Harris* v. *Sumner,* 2 Pick. 129.

*J. W. D. Parker* and *Peck & Colby* for trustees.

1. The arrangement between Merrill and trustees was a *pledge* or *mortgage* of the property. It was not an assignment within the meaning of the act of 1843, nor within the principle of Dana's case. (17 Vt. ) The transfer was *to the creditors,* to indemnify them against liability assumed for Merrill, and for their sole and exclusive benefit. It has never been held that when a transfer has been made directly to the creditor for his security, that the transaction was *void* because the surplus, if any, was not to be distributed among other creditors. Such a rule, if carried out, would avoid a mortgage or conveyance of real estate, if it did not provide, that after satisfying the claims of the mortgagee, the balance should go to other creditors. *Meredith Man. Co.* v. *Smith,* 8 N. H. 347. *Law* v. *Wyman,* 8 N. H. 536. *Henshaw* v. *Sumner,* 23 Pick. 446. *Sargent* v. *Webster,* 13 Met. 497. *Barker* v. *Hall & Trustee,* 13 N. H. 298. *Litch* v. *Hollister,* 4 Comstock 211. *U. S.* v. *McLellan,* 3 Sumner 354–5. *Blanchard* v. *Dias,* 10 Paige 445–8. *Same* v. *Same,* 1 Comstock 201, 204.

These cases make a marked distinction between assignments

directly to creditors themselves, and general assignments in trust for the benefit of creditors. Conditions and reservations which would avoid the latter, may be introduced into the former without impairing their validity. Thus it was held in *Litch* v. *Hollister*, (4 Comstock 211, 216,) when property was transferred to a creditor, as security for his debt, and the surplus was reserved to the debtor, that this reservation did not affect the validity of the transfer.

It is to be remarked that in this case, the transfer of the property was not a *voluntary* act. It was made on the pressure of the trustees. An assignment made under such circumstances is *valid* under bankrupt laws. *Cook* v. *Pritchard*, 6 Scott N. R. 34. *Same Case*, 5 Man. & Gr. 329. *Ogden* v. *Stone*, 11 Mees & W. 494. *Kynaston* v. *Cranch*, 14 Mees & W. 266. *Ogden* v. *Jackson*, 1 Johns. R. 370. *Phenix* v. *Jugubaus*, 5 Johns. R. 412.

2. There being no fraud in fact, trustees should be permitted to hold the property to indemnify them against their liabilities. Comp. Stat. p. 263 § 51, 52. *Grant* v. *Shaw*, 16 Mass. 341. *Ripley* v. *Severance*, 6 Pick. 473.

The opinion of the court was delivered by

ISHAM, J. The plaintiffs having obtained judgment against the principal debtor, the inquiry now arises as to the liability of the trustees on their disclosures. That question depends upon the validity of the written assignment, or transfer of property, which was made by John Merrill, to these trustees on the 9th day of August, 1851, for the purpose of securing them on various liabilities, which they had assumed for him. That instrument as well as the several mortgage deeds, executed by Mr. Merrill, on the 6th and 9th of August, of his real estate in the towns of Corinth and Bradford, should be considered and treated as one instrument, as they were evidently made for the same object, and designed to carry into effect one and the same transaction. It is equally obvious also, that all the property both real and personal, owned by Mr. Merrill, was intended to be, and was in fact, conveyed to these trustees, not only for their security, but from the avails arising from the disposition of the property, to satisfy and pay the several debts, for which they had become liable as his sureties.

If the title of these defendants to that property, under this

transfer is valid, it is not pretended that they are chargeable as trustees; for the property is insufficient to pay the debts for which they were liable. But if that transfer is fraudulent, either in fact or in law, or if for any cause, it is ineffectual to convey the property, for the purpose for which it was made, then these defendants are trustees, and are liable as such to the plaintiffs.

It is insisted that this transfer is fraudulent and void, at common law, as a general assignment, and that it is also void under the act of 1843, which provides " that all general assignments, " hereafter made by debtors for the benefit of creditors, shall be " null and void, as against the creditors of said debtors." We are not called upon in this case, to investigate the principles at common law, in relation to general assignments, or ascertain what provisions, on the face of the instrument, will render it void; for if this transfer is to be regarded as a *general assignment*, the statute itself declares it void. Previous to the passage of that act, general assignments had been sustained by repeated decisions of this court. The practice very generally prevailed, in case a debtor became insolvent, or so embarrassed as to be in danger of having his property attached by his creditors, to make an assignment of all his property to *some person in trust* for preferred creditors, who should become parties to the assignment, and then for the benefit of his creditors generally. *Hall* v. *Denison*, 17 Vt. 311. The evils arising from such assignments are referred to by HINMAN, J., in *Beers* v. *Lyon*, 21 Conn. 610, in which he says, " that assignments were frequently made to the confidential friends and connections of the assignor, and the property kept by the trustees for their personal use, but more generally for the use of the assignor. The difficulty of making even responsible trustees account to the creditors was so great, as usually to prevent their attempting it; and it was of course never attempted, in the more common case, where the trustees were not responsible." The same evils resulting from general assignments, are mentioned by WOODS, J., in *Barker* v. *Hall*, 13 N. Hamp. 301, and were none the less seen and felt in this state. The design of the statute of 1843, was to avoid those evils by prohibiting transfers of that character. It was not intended to affect other modes of transfer from which those evils did not arise. In giving a construction to this. act, therefore, the prohibition should be confined to transfers of

that character, and should not extend farther than to furnish a remedy for the evils which were found to exist. If this transfer had been made by Mr. Merrill, to these defendants, in trust for other creditors, or for themselves and others, it would have fallen within the letter and spirit of the act, as being a general assignment. But this instrument is not one of that character. From its general provisions it is evident, that no such transfer was intended by the parties. The property is transferred to these defendants directly, by Mr. Merrill, to secure them for liabilities which they had assumed for him, with the right of its disposition for the purpose of satisfying those debts. Some of those liabilities were assumed at the time of the transfer; others were assumed to relieve the property from prior liens, which rested upon it. For those liabilities, and those previously assumed at various banks, this transfer was made at the solicitation and requirement of these defendants.

This instrument, under these circumstances, is effective, and operates as a mortgage of this property for their security. These defendants took the same as mortgagees, having a specific lien on the property with the right of its disposition for the payment of those debts, and are liable to account for the same in that manner, and for the surplus, if any, to Mr. Merrill. This is a liability which the law creates, and will enforce, whether such provisions are expressed on the face of the instrument or not. *Wood* v. *Dudley*, 8 Vt. 435.

A transfer of that character is not within the statute of 1843, nor is it affected by any of the rules existing at common law, regulating general assignments. If this transfer is to be regarded as a general assignment, and void under that statute, it would be impossible, so long as the statute remained in force, for a creditor to take security for his debt, or for any liability which he might assume. Such a change in existing laws, and mode of doing business, could never have been intended by the legislature. It would, as observed by the court in *Barker* v. *Hall*, " be extremely unreasonable legislation, to defeat all conveyances by the voluntary act of the debtor, having for their object the fair security of a particular debt, and thereby giving preference, when at the same time, it authorized the creditor to obtain security and preference compulsory, by an attachment on legal process." The au-

Peck & Co. v. Merrill and Trustees.

thorites in treating transfers of this character, valid as mortgages, are very decisive, and we think are founded on correct principles.

In the case of *Meredith Man. Co.* v. *Smith*, 8 N. Hamp. 347, it appeared that the debtor had transferred to a deputy sheriff, his account books, to satisfy various claims on which the sheriff had several writs, for service on the debtor's property, and who had assumed a liability for those debts to the creditors, by his neglect to serve the writs. It was insisted that the transfer of those claims was void under the act of 1834, which provided, that no assignment made for the benefit of creditors, shall be valid unless it provides for an equal distribution among his creditors. It was held, that the transfer was valid, and that it was competent for a debtor, to appropriate a portion of his property for the payment of particular debts, as the same result might have been accomplished by an attachment. The only difference between that case and the one under consideration, is this, that in that case the transfer was of a part of the debtor's property, while in this it was of all. In the case of *Law* v. *Wyman*, 8 N. H. 536, it was held, that a pledge or mortgage by a debtor of *all his property* to secure the payment of a particular debt, was not an assignment within the meaning of the statute of July 5, 1834. The court remarked " that the assignments intended by the statute are general " assignments, purporting to convey *all the debtor's property to trus-* " *tees* for the benefit of all his creditors who will become parties " to the assignment, and assent to the terms upon which it is made. " The statute could never have been intended to embrace a *mort-* " *gage or a pledge of any or all of a man's property* for the security " of a particular debt. A debtor has an undoubted right to con- " vey *all his property to one of his creditors* in satisfaction of his " debt. The statute was not intended to prohibit such a prefer- " ence." In the case of *Barker* v. *Hall*, 13 N. H. 298, it was also held that a mortgage by a debtor of *all his property to secure the payment of a portion of his debts*, leaving others unprovided for, is not an assignment within the statute of 1834; and that the mortgagee was not liable as the trustee of the mortgagor. The court in their opinion referred to the two cases from the 8 N.H. 347, 536, and observed " that we see no reason to question the propri- " ety or soundness of the decisions upon this subject to which we " have referred."

The same doctrine is sustained in Massachusetts. In the case of *Henshaw* v. *Sumner*, 23 Pick. 446, an insolvent debtor assigned and conveyed certain goods to some of his creditors to pay the debts severally due them, and to indemnify them respectively against their liabilities for him. This transfer was made subject to a previous one of a similar character to George W. Pratt and other creditors. Both instruments gave an express authority to sell the property, and after the payment of the debts, the surplus was to be accounted for to the debtor. The court remarked that the case " was the ordinary one of two successive mortgages of the same property, by an insolvent debtor, to different creditors, to secure their respective debts." It was held that the transfers were valid, and that the property could be held by the assignees notwithstanding the statute of 1838, which provided that no assignment or conveyance made by an insolvent debtor to assignees or trustees for the benefit of creditors, shall be valid against creditors, unless the transfer gave to each of the creditors who shall become parties to it, an equal share without any preference. If those successive transfers were general assignments, they would have been void under the statute ; but as mortgages to the creditors themselves, they were held valid and not within the prohibition of the statute. In the case of *Sargent* v. *Webster*, 13 Met. 497, it was held " that the directors of an insolvent corporation have authority to convey *all the property of the corporation to one of its creditors*, upon condition that he shall apply the property to the payment of his claim, and pay over the surplus, if any, to the treasurer of the corporation ; and that such conveyance is not fraudulent, as against other creditors, by reason of its tendency to give a preference. In the case of *Bouchaud* v. *Dias & Freeman*, 1 Comstock 201, insolvent debtors as partners, transferred *all their property* to the amount of $80,000, to a creditor to pay a debt which they owed him of $6,873 ; and to pay notes and custom-house bonds which the creditor had signed as surety for the debtors to the amount of $30,626. No provision was made for the payment of any other debts ; and after the payment of those debts, the surplus of the property was to be accounted for to the debtors. The act of Congress passed in 1799, provides that when a person insolvent, makes a voluntary assignment for the benefit of creditors, that preference shall be given to debts due the United States,

Peck & Co. *v.* Merrill and Trustees.

and that those debts shall be first paid. If the transfer by the insolvent in that case of all his property made a general assignment, the debts of the United States had a preference. It was held not to be a general assignment, nor within the act of Congress. The court by BRONSON, J., remarked, " that no fair or reasonable con-"struction of the act of Congress will give the government a pref-"erence, when the debtor has only assigned his property for the " purpose of paying or indemnifying a single creditor or surety." The same doctrine was recognized by STORY, J., in the case of *U. States* v. *McLellan,* 3 Sumner 345. By statute in New York, all conveyances and transfers, &c. in trust for the use of the person making the same, is declared to be void as to creditors, (2 R. S. § 1.) In the case of *Litch* v. *Hollister,* 4 Comstock 211, an insolvent debtor assigned a chose in action to certain of his creditors for the purpose of securing their demands, reserving the surplus to himself. It was held " that neither the principle nor the statute " applies where the assignment *is to creditors themselves for the* " *purpose of securing their particular demands."* Such a transfer, " whatever may be its form, is in legal effect *only a mortgage,* and " creates but a specific lien on the property assigned. The resid-" uary interest of the assignor may be reached by legal process, or " bill in equity, according to the nature of the interest or of the " property."

It is evident from the authorities, that the transfer by a debtor of all his property does not of itself make what is termed a general assignment, but it must also be conveyed to trustees, to be held by them in trust for other creditors. If it is conveyed directly to creditors or sureties for their benefit, and no trust is created for others, the transfer is then to be treated as a mortgage or pledge of personal property. In such case, there is no more impropriety in taking a lien on the whole of the debtor's property, than upon a part, provided there is not an unreasonable disproportion between the value of the property, and the amount of the debt. This, we think, is the character of the transfer made by Mr. Merrill, to these defendants. The transfer was made directly to them as sureties ; no debts were to be paid by them except those due to them, and for which they were liable for him ; and no trust was created for the benefit of others. The surplus only can be reached by the cred-

itors, and as none exists in this case, the defendants are not chargeable as trustees of the debtor.

The exceptions allowed on the acceptance of the disclosures of the trustees, and the refusal of the court to charge the defendants as trustees for the want of disclosures, must be overruled. Without the expression of any approval of the manner in which the disclosures were obtained, or in which the examination was conducted, it is sufficient to observe, that the whole matters embraced in those exceptions, were matters resting in the discretion of the county court, and are not revisable on exceptions. It was discretionary with that court to recommit the matter for further disclosures, or to proceed with the examination in open court, or to accept the disclosures as reported. The disclosures as made and reported, having been accepted by the county court, the matter cannot be reconsidered in this court.

The judgment of the County Court discharging the defendants as trustees must be affirmed.