JOHN A. STANLEY *v.* JOHN G. ROBBINS.

*Lease. Assignment. Possession.*

Under the Act of 1843, an assignment must contain a trust for the benefit of others not parties to it, and embrace substantially all the debtors property.

The statute of 1852, must receive the same construction as that given to the Act of 1843, as to what contracts or transfers come within the act.

A provision in a lease that the rent shall be paid yearly by the lessee to a creditor of the lessor, does not create a trust that the creditor can enforce against the lessor, hence such a lease is not an assignment within the statute.

Such a lease is not an assignment for the reason also, that even though it embraces all the debtor's property, it is not a transfer of all the debtor's interest in that property.

Such a lease not being an assignment, is not subject to the special requirements necessary to the validity of assignments, either at common law or under the statute.

A stipulation in a lease by the lessee to keep a cow for the lessor, is not an obligation for support of such personal character as to make the lease void as to the creditors of the lessor.

Stanley *v.* Robbins.

But if it were, it is not sufficient in amount to give character to the instrument, and thus avoid it.

A lease valid in other respects, will not be void as to the creditors of the lessor on the ground that it puts the lessor's property beyond the reach of attachment until the end of the term.

The validity of the contract must depend on the same principle as if it had been a sale, mortgage or pledge, that is, it must depend on the question of fraud in fact, and the change of possession.

But the property leased is, in fact, subject to immediate attachment by trustee process.

In respect to the appearance of a change in the possession of personal property required in order to protect it from attachment by the creditors of the vendor, it is *held,* that on the one hand the purchaser must see to it that he so conducts with the property as to indicate by the appearances to an observer a change in the possession, and on the other hand creditors of the vendor are bound to see what others can see, and judge and act upon it with that prudence that is required of men in business affairs.

TRESPASS for taking certain personal property. Plea, the general issue, with notice of the justification.*

It appeared from the testimony detailed in the bill of exceptions, that the property taken was the stock and farming tools on the farm occupied by the plaintiff as tenant; and that the defendant's justification was that he was deputy sheriff of the county of Orange, and took the property by virtue of a writ of execution.

On trial, the plaintiff, to prove his title to the property sued for, gave in evidence a lease in writing from his father, Edward B. Stanley, to himself, dated April 1st, 1856, and proved its execution by the said E. B. Stanley.

It appeared from the terms of the lease that the said E. B. Stanley, leased to the plaintiff, his son, a farm situated in Washington, Vt., for the term of three years, reserving to himself the house, shed and garden on said farm, and also leased with the farm during the said term, all the farming tools on the farm, one yoke of oxen, one pair of horses, two cows, one pair of two year old stears and one yearling colt, for the sum of $125. a year

---

*Neither the declaration, nor the notice of justification was sent to the reporter.

for said farm and stock, &c., to be paid yearly by John A. Stanley the plaintiff, on notes which Horace Stanley held against the lessor E. B. Stanley, the growth of the stock to be John A. Stanley's. The said John A. was at the expiration of said term to leave the same stock, or the same value of stock on the the farm. And he agreed to keep one cow on the farm during said term for the said E. B. Stanley to leave the farm in as good repair as it then was, and to pay all taxes on said farm and stock during said time.

It appeared from E. B. Stanley's testimony, that at the time of executing said lease, he had no attachable property, other than that therein described, except one old horse, worth perhaps, $40, and that he was largely indebted to creditors other than Horace Stanley who was named in the lease, and was liable for more than he was worth. The defendant thereupon insisted that the instrument was void under the assignment laws of the state, and conveyed no title to the property described in the plaintiff's declaration, as against the creditors of E. B. Stanley; but the court overruled the objection and admitted the instrument in evidence; to which decision the defendant excepted.

It further appeared from the testimony on behalf of the plaintiff, that after the lease was made the plaintiff carried on, and had the control and management of the farm, and did the trading, and sold the stock and produce of the farm; that the plaintiff, the lessee, was 21 years of age in March 1856, had lived with his father, the lessor, before he was 21, and boarded with him after he was 21, and that the lessor kept house in the house on the farm reserved in the lease; that the lessor worked on the farm most of the time during the farming season of the first year of the lease, for one dollar per day, except in haying when he worked for a dollar and a half per day, and charged at the end of each month on book for his work for the month; that he worked the second year as the first; that in 1858, a decree of foreclosure was obtained on a mortgage on the farm to one Moore, and the title having become absolute, the plaintiff bought the farm; that after he bought the farm, his father, the said E. B. Stanley, remained in the house as before, and boarded the

plaintiff and worked on the farm for him ; that prior thereto the plaintiff furnished the lessor, his father, with corn and other produce, for all of which he charged him, and let him have the milk from his cows under an agreement that the lessee should keep the cows, and his father have the milk at a fixed price ; that he kept the lessor's horse the first year and charged $30. for it ; that the horse was occasionally used on the farm for which no charge was made by the lessor ; that the second year the lessee used the horse to pay for his keeping ; that the lessee exchanged most of the stock leased on the place for other stock ; that the lessor did not question his right to do so, under the lease ; that in the year 1856, the lessor had twelve sheep, and in 1857 fourteen sheep, kept on the farm, and was charged $1.50 per head for their keeping ; that in 1856, the lessor drew his wood with the oxen named in the lease, and the next year with the oxen for which those named in the lease were exchanged by the lessee, for which the lessee charged nothing ; that they settled at the end of the first year, and found the lessee owing the lessor about $60. which was applied on a note which he held against the lessor ; that they have not settled since, on account of the taking of the leased property by the defendant, and that they were waiting the result of this suit ; that the plaintiff had one horse independent of the one mentioned in the lease ; that after the plaintiff purchased the farm in 1858, the lessor had his support without charge, and charged the plaintiff nothing for his work.

The plaintiff conceded that the defendant was deputy sheriff in February, 1858.

The defendant gave in evidence among other things a copy of a record of a judgment rendered in the Windsor County Court, December Term, 1857, in favor of *Solomon Downer* v. *John Parker and E. B. Stanley*, with the execution and officer's return thereon ; upon which execution, the property sued for was taken by the defendant ; and evidence tending in some respects to show that there was no change or appearance of change of possession in the control and management of the property.

The plaintiff then introduced some further testimony tending to show an open and visible change of possession. Evidence was given by both parties as to the value of the property.

28

The defendant insisted, (1.) That upon the facts in evidence the lease was void under the assignment laws of this state—and requested the court so to instruct the jury, as matter of law. (2.) That the lease was void for fraud in fact. (3.) That the plaintiff could not recover by reason of fraud in law in respect to the title and possession of the property taken by the defendant, and requested the court so to charge the jury. (4.) That in no event was the plaintiff entitled to recover the value of the cows taken by the defendant, by reason of an entire want of change of possession under the lease, or at least, by reason of there having been a joint and concurrent possession and control of the property by the plaintiff and E. B. Stanley, and requested the court so to instruct the jury. The court refused to charge as requested.

The charge as given is stated in substance in the opinion of the court.

To the charge of the court as given and to the omission of the court to charge as requested, the defendant excepted.

*C. W. Clark,* for the defendant.

I. The instrument relied upon by the plaintiff, was improperly admitted in evidence. It is an assignment and void as to the creditors of E. B. Stanley, under the statute laws of this state. Laws of 1852, p. 14—1855, p. 15, because, first, it has not been proceeded with according to their provisions ; and second, it makes a preference of creditors.

It is void at common law because it does not provide for the distribution of the entire property among the creditors. *Dana* v. *Lull*, 17 Vt. 390 ; 1 Am. Lead. Cases 27. From the general character and necessary effect of the instrument, it ought not to be upheld. The effect of it is to secure the property from attachment, and delay creditors. There is also a reservation to the debtor. 1 Am. Lead. Cases 67 ; *Hooper* v. *Tuckerman*, 3 Sandf. 316. If the creditor might avail himself of the trustee process, the debtor has no right to shift the responsibility from himself to another with whom the creditor never dealt. He may be irresponsible. *Jones* v. *Spear*, 21 Vt. 426. This is an indirect way of conveying ones property for the support of ones-

self and family at the expense of creditors, and such conveyance is void. *Crane* v. *Stickles*, 15 Vt. 252 ; *Jones* v. *Spear*, 21 Vt. 426.

II. The court erred in refusing to charge the jury that upon the evidence on the part of the plaintiff, if believed, the transfer was fraudulent for want of sufficient change of possession. *Stiles* v. *Shumway*, 16 Vt. 435.

III. With respect to the cows, there was a joint possession and the court should have so charged. What shall constitute a joint possession is a question of law. *Hall* v. *Parsons*, 17 Vt. 271.

*B. Martin*, for the plaintiff, insisted that the contract between E. B. Stanley and the plaintiff was either a lease in terms or legal effect, or it was not ; and this independent of any proof outside of the writing itself.

But if it was a lease, then, whether it shall be operative between the parties against the creditors of E. B. Stanley, may depend upon two considerations. 1st. Was it made with *intent* to defraud creditors. 2d. Was there a substantial and proper taking possession of the property by the lessee.

A person in debt may make a valid lease for a term of years, and include in it property requisite to pay that indebtedness, but which the lessee will hold under the lease to the end of the term. *Smith* v. *Niles*, 20 Vt. 315 ; *Hartford* v. *Jackson*, 11 N. H. 145. It is in form and substance a lease.

In all assignments for the benefit of creditors the title to the property is conveyed to the trustee to be by him disposed of, turned into money, and to be then paid to the creditors. A stipulation in a lease that the rent should be paid to a person to whom the lessor was indebted, does not make the lease void, *as matter of law*, as to other creditors. Burrill on Assignments, 1, 2, 345. *Low* v. *Wyman*, 8 N. H. 536 ; *Barker* v. *Hall*, 13 N. H. 298 ; *Bonchard* v. *Deas*, 1 Com. N. Y. 202 ; *Ridgway* v. *Stewart*, 4 Wat. & S. (Penn.) 383 ; *Michigan Bank* v. *Bank of Pennsylvania*, 7 Wat. & S. (Penn.) 335.

Under the charge of the court the jury found, 1st. that there was no *intent* to defraud creditors by the parties to this lease. The charge was correct upon this point. *Edgell* v. *Lowell*, 4

Vt. 405; *same case*, 7 Vt. 534. 2d. That there was no fraud in law, or in other words, that there was such a change of possession of the property as the law requires to purge the transaction of fraud as to the creditors of the lessor. Upon this point the charge was all that the law required, or that the defendant should claim. *Stephenson* v. *Clark*, 20 Vt. 624; *Burroughs* v. *Stebbins*, 26 Vt. 659; *Parker* v. *Kendrick*, 29 Vt. 388; *Farnsworth* v. *Shephard*, 6 Vt. 521; *Lyndon* v. *Belden et al.*, 14 Vt. 427; *Wilson* v. *Hooper et al.*, 12 Vt. 653; *Allen* v. *Edgerton*, 3 Vt. 442; *Hall* v. *Parsons*. 17 Vt. 271.

PECK, J. The plaintiff claims under a lease from E. B. Stanley to him, dated April 1st, 1856, for three years. The defendant, as deputy sheriff, justifies under an execution against E. B. Stanley, the lessor, by virtue of which he took the property in February, 1858.

1. It is insisted by the defendant's counsel, that the lease is void under the statutes relating to assignment. The Act of 1843 is in terms limited to general assignments. The Act of 1852 is not expressly so limited, but its provisions all show that it was only general assignments that the legislature had in view. It cannot be supposed the intention was to impose such restrictions upon every transfer of a particular article out of the bulk of one's property to pay or secure a particular debt. To come within the act there must be a trust created for the benefit of some persons other than the parties to the assignment. *Noyes* v. *Brown and Trustees*, 33 Vt. 431. It must be regarded as settled that in order to come within the Act of 1843, an assignment must contain a trust for the benefit of others not parties to it, and it must be general, that is, it must embrace, substantially, all the debtor's property. Both these requisites are indispensable for that purpose.

In *Mussey* v. *Noyes*, 26 Vt. 463, the assignment contained such trust, but it was held not to come within the Act of 1843, because it did not embrace all the debtor's property, although it included some $80,000. or $90,000. of property and omitted $15,000. or $20,000. In *Peck & Co.* v. *Merrill and Trustee*,

26 Vt. 686, the assignment was general, embracing all the debtor's property, but it contained no trust for other creditors, and it was decided not to be within that statute for the reason that it contained no such trust. As to what contracts or transfers came within the act, we think the Statute of 1852 must receive the same construction as that given to the Act of 1843. It was intended as a substitute for it. The Act of 1852 was intended to permit and regulate what the Act of 1843 had prohibited. Similar statutes in other states have been so construed as the cases cited in argument, and many others that might be referred to, show. *The U. States* v. *Hooe et al.*, 1 Pet. Cond. 458 ; *The U. States* v. *Howland & Allen*, 4 Pet. Cond. 404 ; *Conrad* v. *Atlantic Ins. Co.*, 1 Pet. 386 ; *Henshaw et al.* v. *Sumner*, 23 Pick. 446 ; *Mer. Manf. Co.* v. *Smith & Tr.*, 8 N. H. 347. See St. of Mass. 1836, and N. H. St. of 1834, relating to assignments. It is claimed by the defendant's counsel that the lease in question contains such trust as is necessary to bring it within the statute. This depends on the construction of the instrument. The provision relied on is that in relation to the payment of the rent. The instrument is in the usual form of a lease in its general provisions. The language of the lessor in relation to the rent is, that he leases the property for the term mentioned, " for the sum of one hundred and twenty-five dollars a year for said farm and stock, &c., to be paid yearly by the said John A. Stanley on notes which Horace Stanley holds against said E. B. Stanley." In a subsequent part of the lease the plaintiff among other things stipulates to " pay on the notes above mentioned yearly one hundred and twenty-five dollars for the use of said farm and stock." Does this language give to Horace Stanley a right to compel the lessee to pay to him, or create a trust he could enforce against this plaintiff? It is not the common language of a trust, although it manifests an intention in the parties to the lease to have the payment thus made. But in this case there is nothing transferred but the temporary use, leaving E. B. Stanley still the owner of the property, and there is nothing else except the language above stated, to show that the purpose of the lease was to secure to Horace Stanley his debt.

It is like the ordinary case of the sale of a particular piece of property with an agreement by the purchaser with the seller, to pay for it by paying a particular debt to a particular creditor which the vendor owes, without any privity with such creditor. In such case the creditor to whom the payment is to be made, has no right that he can enforce under such contract. We think the lease created no trust that Horace Stanley could enforce. It would have been competent for the parties to the lease to have directed the payment to some other purpose notwithstanding that stipulation, or to have surrendered and cancelled the lease, and put an end to the accruing rent, without the assent of Horace Stanley. We think, therefore, that it cannot be said that this lease was in trust for Horace Stanley, and for this reason it is not an assignment within the statute. This lease is wanting in another requisite of a general assignment. It is not an assignment of all, or substantially all, the debtor's property. Even if we could say that it embraces, substantially, all the articles or subjects of property, (and perhaps we might say this,) yet it does not transfer all, or substantially all, the debtor's interest in that property. In fact it is only the use for a short time that is transferred. The property, title or ownership is not transferred. That is still left in the lessor, and constitutes the substantial value compared with the value of the use transferred. A transfer of a partial interest in one's entire property is no more a general assignment than a transfer of one's entire interest in a part. Hence it is said in the books that an assignment imparts a transfer of the entire interest. That is no reason why a pledge or mortgage is held in the cases cited by counsel not to be within the statutes relating to assignments. The instrument in question is not an assignment in the commercial sense, or in the popular sense of that term, and not within the statute.

2. It is also claimed that this lease is void at common law by reason of certain restrictions imposed at common law on assignments by debtors. It is claimed that it is void because the property is to come back to the lessor without any provision for a distribution among the creditors. But as we hold that this is not a general trust assignment, this class of objections have no appli-

cation. It is only in relation to general trust assignments that such restrictions are imposed or such requirements held necessary at common law. They have no application to partial assignments, or assignments not in trust; much less are they applicable to such an instrument as this, which is not an assignment in form or in substance either under the statute or in the common law sense of that term as applicable to this subject. We are cited to *Dana* v. *Lull*, 17 Vt. 390, where it was decided by a majority of the court that a general trust assignment for the benefit of certain specified creditors was void because it contained no provision for a distribution of the surplus among the other creditors, but left an implied resulting trust to the assignor. In that case there was a trust to certain creditors not parties to the assignment, and the court labored to show that upon the evidence it must be taken to be an assignment embracing all the debtor's property, and then proceed to decide that it is a general assignment and therefore void for the reason already stated. The fair inference is, that the court considered that if it was not a general assignment the objection did not apply. In the subsequent case, *Peck & Co.* v. *Merrill & Tr.*, 26 Vt. 686, the same objection existed, and was urged as fatal both at common law and under the statute, and the case of *Dana* v. *Lull* was relied on. The court sustained the assignment, holding that the assignment, though embracing all the debtor's property, was not a general assignment in the legal sense of that term,—not containing any trust for others. Many cases are cited in the opinion in that case, in which it is decided that unless the assignment is a general trust assignment, the debtor may reserve even expressly a trust to himself in the surplus. This point was so decided in *Henshaw* v. *Sumner*, above cited. The court evidently regarded the objection at common law as of no force except in case of a general trust assignment. This answers also the objection that the lessor reserved an interest in the premises by the provision as to pasturing a cow. This, however, is not a reservation of any such interest, it is only a mode of payment of so much rent in addition to the $125. Neither is the provision for the return of the property at the expiration of the lease a reservation in any legal sense applicable to this question.

The lease therefore is not an assignment in such a sense as to subject it to the special requirements necessary to the validity of assignments either at common law or under the statute.

3. It remains to be considered whether upon general principles this lease is valid as against the general creditors of E. B. Stanley, though made upon good and adequate consideration, and in good faith, without any intent to defraud, hinder or delay creditors. This depends upon the power of a debtor over his own property where he owes more than he has the means and ability to pay. That he has some power of disposition must be conceded. That he has not all the power that he has when not indebted must also be conceded. Creditors at any time after their debts become payable can select their own time to secure their demands by attachment or levy; but until they do so, they have no such special lien on the debtor's property as to deprive the debtor of that general dominion over it incident to ownership. He has the *general* right to manage, control, sell, exchange, mortgage, pledge and deal with it, and enter into business contracts in relation to it, in such way and manner as he judges will best conduce to its preservation and increase. This general right is not only incident to ownership and to the right to accumulate property, but it is beneficial to his creditors that he should have and exercise that right; otherwise the property might waste and go to decay, or be wholly unproductive. This power however has some limitations growing out of the debtor's general duty to his creditore. He cannot dispose of his property by gift without retaining sufficient to pay his existing debts. He cannot transfer it in consideration of an obligation for support for life, or perhaps for support for any considerable length of time, unless he retains so much as is necessary to satisfy existing debts; and one reason is, that in such case the obligation for support being of a personal character, the property would not be subject to attachment by trustee process, as was decided in *Briggs* v. *Beach and Trustee,* 18 Vt. 115. It is the *character* of the consideration in such case that avoids the sale. It is sought to bring this lease within this principle by means of the stipulation of the lessee to keep a cow for the lessor. This provision is not of a personal character; but if it were so, it is not sufficient

in amount to give character to the instrument and thus to avoid it. It is not every contract, however temporary or small in amount, having for its object a contribution to one's personal support, that is void as against creditors. If that were so, a man could not pay a month's board ·or a quarter's rent in advance, without subjecting it to liability to be collected back by his creditors from his landlord by trustee process, or if paid in property, subjecting the property to attachment by the creditors of such guest or tenant. Such debtor cannot dispose of his property for the purpose of defrauding his creditors to a person cognizant of such purpose. This lease is not obnoxious to any of these limitations upon the power of the debtor over his own property. It is said in argument that the effect of the lease, if upheld, is to put the property beyond the reach of attachment till the end of the term, and thus delay creditors.

This objection is unanswerable if a debtor can make no contract the effect of which is to delay creditors. But no such universal proposition can be maintained upon principle or authority. Why does the lease delay creditors? Because at common law property can not be levied on unless it is so situated that the officer can take it into his custody, and that he cannot do on a process against the general owner when it is in the hands of a bailee with a right of possession for a time not expired. He ·can not thus invade the rights of the bailee. The defendant's argu-· ment goes upon the ground that such leases, as a general rule, are valid, and put the property beyond the reach of such attachments. *Smith* v. *Niles,* 20 Vt. 315, establishes this principle. That was a lease of a farm and live stock for three years under provisions almost identical with those in this lease, especially that providing for the return of the same property or other of the same kind and value. It was held in that case that the purchaser at a sheriff's sale, during the lease, on an execution against the lessor, took no title even as against the lessor, although the lessee was not disturbed in his possession under the lease during the term. That case must govern this, unless the fact in this case, that the lessor had but little other property, and owed debts beyond his ability to pay, makes a difference in

the result.   But notwithstanding this the. validity of the contract must depend on the same principle as if it had been a sale, mortgage or pledge, that is it must depend on the question of fraud in fact, and the change of possession.   It is conceded he could have legally sold the property ; if so, why could he not lease it?   It may be said, had he sold it he would have received an equivalent which might have been available to creditors. But that is not certain.   Suppose he had sold or exchanged it for household furniture or other property exempt by law from attachment, the sale would have been valid, and the creditor defeated entirely, while now he is only at most delayed.   Again, this property, as well as the $125. annual rent under the lease, was all attachable by trustee process, so that the property was subject to immediate attachment.   The defendant's counsel insist that the creditor would still be delayed in collecting his judgment in the trustee suit out of the property, till the end of the term.   So he would had the debtor sold the property on three years credit, and the creditor had attached the debt on trustee process.   It is said by counsel that the debtor had no. right to turn the creditor over to the responsibility of a trustee ; but if he could do it by sale on credit, why not by lease, when he leaves both the rent and the property open to attachment by trustee process?   In case of conditional sales, sales in which the property is to vest in the vendee on condition of the payment of the price, the property, until a recent statute on that subject, was not attachable as the property of either party, and yet such sales have always been upheld.

It is said, if a debtor can lease his property for three years he might for twenty, or any length of time.   But on the other hand, it may be said with equal propriety, that if he can not lease it for three years he can not lease or let it at all ; so that if one hires a horse of a livery stable-keeper for a week it may be taken from him in the middle of his journey by the creditors of the owner.   But extreme cases on either side are not a very safe guide to a result in the particular case.   This lease is no longer than the lease in *Smith* v. *Niles,* but if it could be said in any case that the length of time was so unreasonably long as to

furnish conclusive evidence of fraud, it cannot be affirmed of the lease in question. There are obvious reasons why one who lets or takes a farm may choose to have a lease for more than a single year. It seems more reasonable that creditors should be put to a little delay incident to common business transactions than that third persons should be deprived of rights acquired under *bona fide* contracts made with debtors while suffered by creditors to remain in possession of their property. The lease is valid and gave the plaintiff a right to the possession of the property during the term as against the creditors of the lessor. The legislature have by the Act of 1858, so far interposed in this matter as to render personal property while under lease attachable, subject to the lease, and if any further remedy is necessary it must be afforded by the legislature, not by the courts.

4. The remaining questions arise under the charge on the question of change of possession. The evidence tends to show that the plaintiff's father, the lessor, continued to reside in the house excepted from the lease, the plaintiff boarding with him and carrying on the farm, the plaintiff having the exclusive possession and management of the leased property and conducting the business in his own name, under the lease, his father laboring for him for wages a portion of the time. The evidence on this branch of the case is set forth in detail in the exceptions. Certain facts not in dispute appear in the testimony which the defendant relies on showing that the possession of plaintiff was not such as the law requires to protect the property in question from attachment. The defendant's counsel requested the court to instruct the jury in substance, that upon the evidence there was not a sufficient change of possession to enable the plaintiff to recover. It is not necessary to refer particularly to the evidence, it is sufficient to say that in our opinion the evidence tended to show that there was such a change of possession as answered all the requirements of the law, an exclusive, open, continuous and visible or obvious possession in the plaintiff; and that the evidence relied on by the defendant's counsel of certain exceptional acts of the plaintiff's father to show the contrary, and to show that the plaintiff's possession was joint or concurrent with his father, was all susceptible of explanation consistently with an exclusive

possession in the plaintiff containing all the legal requisites for the purpose in question, and that there was evidence tending so to explain such acts. The defendant therefore was not entitled to the instruction asked. The defendant made a similar request particularly as to the two cows, which was properly refused for the same reason.

The remaining objection relied on arises under exceptions to the charge as given. No question is made, and none could properly be made, but that in the course of the charge the court laid down correctly all the. general principles applicable to a change of possession necessary to protect personal property from attachment. The charge is very full and clear in the enunciation of these principles, and pointed in the application of them to the particular features and aspects of the case as presented by the evidence. It is to certain paragraphs in the charge by way of illustrating and applying a general principle to the case, that the defendant's counsel now object as erroneous. The court charge the jury as to the necessity of a change of possession, and what was necessary to constitute such change, and constitute such possession in the plaintiff as the law required ; and among other things, tell the jury that it was necessary that there should have been an open and substantial change of possession as between the plaintiff and E. B. Stanley, in order to protect the property from attachment and execution on the debts of E. B. Stanley, and that it was necessary the plaintiff's possession should have become and remained exclusive in the plaintiff, and not been joint between him and his father, &c. Thus far no complaint is made. But the case shows that in a subsequent part of the charge the court use this language : "Not only must there have been such a change of possession in fact, but in order to protect the title of the plaintiff as against the creditor of the father, it must have been open and apparent, so that prudent persons cognizant and familiar with the conduct of the business prior to the leasing to the plaintiff, and along thereafter through 1856–7 up to the time the property was taken by the defendant, and interested to know who had the possession and control of the property and business after the leasing, would have been put on such inquiry, that if prosecuted, would have resulted in their

ascertaining the fact of the plaintiff's control and interest in the property." After some further comments, in the course of which the jury are told that from the nature of the particular case, the main thing in respect to which there could be an apparent observable change, would mainly consist in the matter of controlling and managing the business of carrying on the farm, such as the employment and payment of help, the disposing of the products, making the trades for stock for the farm, asserting rights as to, and superintending the matter of fences, and of encroachments by others, &c. ; the court then proceed to say that, " if in these respects there was such a change as to indicate to the neighbors and those having deal touching, and in connection with, the carrying *on*, and the stocks and products *of*, the farm, that the father had ceased to be, and that the plaintiff had become the person in control, management and interest, and thus if interested to know the real situation of the farming property and products, *would have been led as prudent men to make enquiry* in respect thereto, and that enquiry would have resulted in their ascertaining the plaintiff's title, and that he was holding, managing, dealing with and carrying on the farm and personal property under the lease, then such change of possession would be sufficiently open and apparent to answer the requirements of the law *in this respect.*"

The defendant's counsel object to this portion of the charge, claiming that it is equivalent to telling the jury that if the plainttiff had such possession as to put a prudent man on enquiry as to title and possession, it is sufficient. But we think that is not the construction of the charge. The judge had already enforced upon the jury the necessity of a substantial, continuous, exclusive and open possession in fact, and in this branch of the instructions is speaking of the necessity of its being also obvious or observable, that is indicated to an observer *by the appearances.* This the jury were told was necessary. The legal proposition that the possession or change of possession must be obvious, or observable, or as sometimes expressed, *visible*, or such that the appearances would indicate to an observer that there had been a change of possession, is quite general, and often leaves a jury in controverted cases still in doubt in applying the rule to the particular case, as to how obvious, how observable, how visible, or how

clearly the appearances must indicate to the mind of an observer that there has been such change. A judge rarely leaves a case to a jury on this naked, abstract general proposition, without illustrating and applying it to the peculiar aspects of the evidence in the case. In doing this however nothing should be said that infringes upon the general rule. In *Flanagan* v. *Wood*, the court say that the creditor is to *observe*, not *enquire*. That was a proper remark as applicable to that case, for there was nothing that one could observe to indicate a change of possession. We admit the truth of that remark to the extent of requiring as a general rule, that the change of possession must be such *as is* observable without enquiry. The charge in this case required the jury to find this. The court tell the jury that the change of possession must be open and apparent, and it is only upon the question how apparent or observable the change must be, and how clearly or to what degree of clearness or certainty the appearances must indicate to an observer such change of possession, that the court allude to what would put a prudent man on enquiry. I think it correct to say in reference to this question, that on the one hand the purchaser must see to it that he so conducts with the property as to indicate by the appearances to an observer a change in the possession, and on the other hand the creditors of the vendor are bound to see what others can see, and judge and act *upon it with that* prudence *that is* required of men in business affairs. On one construction of the charge this is substantially the idea conveyed. I should hold the charge on this ground correct. But one member of the court who concurs in affirming the judgment would put it on this ground, that what the previous clause in the charge requires the jury to find, is sufficient, and that what is said as to leading a prudent man to enquire, is not to be understood as qualifying it, or as a measure of the degree of certainty or clearness with which the appearances must indicate a change of possession, but that it is thrown in as one reason why what the charge previously requires the jury to find is sufficient, or is only a simple statement that it would lead a prudent man to enquire. If the charge will bear this construction, it is clearly not erroneous.

Judgment affirmed.