JOHN McLEAN, administrator, *vs.* ADDIE C. WEEKS.

*Voluntary conveyance by intestate—void as to amount of debts due from him.*

The administrator of an insolvent estate, in an action for money had and received, may recover for money given by his intestate after he became insolvent without a valuable consideration.

As such gift is valid as against the heirs of the giver, the donee is entitled to all over the amount required for the payment of debts and expenses of administration.

It is for the administrator to show the amount of such debts and expenses, and he is entitled to recover only that amount.

Plaintiff's attorney may administer the oath required by R. S., c. 113, § 2, to authorize the arrest of the defendant.

ON EXCEPTIONS.

This was an action of assumpsit for $700.00, money had and received, brought by the plaintiff as administrator of the estate of William Woodman, deceased.

The writ was served by arrest of the defendant, an affidavit having been made upon the writ and sworn to by the plaintiff before Jason M. Carlton, Justice of the Peace, in the form prescribed in R. S., c. 113, § 2.

The writ was made and entered by Jason M. Carlton, attorney. Upon the second day of the first term the defendant filed a motion to dismiss the suit for want of legal service, and the court overruled the motion.

It is admitted by defendant that plaintiff's intestate, on the 3d day of December, 1868, gave and delivered the defendant the sum of $700.00 in consideration of love and affection simply, and that Woodman died Dec. 25, 1868.

The plaintiff offered to show by the proper evidence that the estate of Woodman was rendered insolvent, and to prove that in fact it was insolvent at the time of the gift and of his decease.

The court ruled that an action at law could not be maintained on the facts offered to be proved, and the plaintiff filed exceptions.

*A. P. Gould*, for the plaintiff.

1. The gift was voluntary, without valuable consideration. It was made in contemplation of approaching death, and intended as a provision for the defendant and void as to creditors. *Welcome* v. *Batchelder*, 23 Maine, 85.

2. The administrator is the trustee and representative of creditors. If property has been placed in the hands of third persons, by his intestate, which of right ought to belong to the estate, it is his duty to take the necessary steps to recover it. *Fletcher* v. *Holmes*, 40 Maine, 364, 367, 368. The administrator may maintain an action at law to recover the $700.00. *Martin* v. *Root*, 17 Mass. 222. It appears here that Woodman was insolvent at the time of this gift, and consequently the whole amount will be necessary to pay the debts. It is therefore a stronger case than *Martin* v. *Root*.

3. The gift cannot be good in part and bad in part, for if the intestate was insolvent at the time of the gift and so continued till his death, it was wholly void. Therefore if the $700.00 exceeded the amount of the prior debts, outstanding at the time of his death, subsequent creditors would be entitled to the balance.

4. The authorities cited by defendant do not sustain the proposition that the only remedy is in equity. These cases show that the only instances in which a suit in equity can be maintained by the administrator, to recover property or money transferred by a fraudulent or voluntary conveyance, are where there is a failure of proof to sustain an action at law.

5. As the estate could not have been represented insolvent until the proper inventory had been returned, it will be presumed that it was returned.

*A. Libbey*, for the defendant.

In this case the gift to defendant was executed. It was for love and affection. It was not made for the purpose of defrauding creditors. It is valid against everybody, unless Woodman was insolvent at the time it was made, and then against everybody except existing creditors. *Beal* v. *Warren*, 2 Gray, 447 ; *Parkman* v. *Welch*, 19

Pick. 237; *Pelham* v. *Aldrich*, 8 Gray, 515; *Rollins* v. *Mowers*, 25 Maine, 192; *Webster* v. *Whitney*, 25 Maine, 326.

1. An action at law cannot be maintained to recover back the donation. The proper remedy is in equity. The defendant has a right to retain all the donation not needed to pay the debts of the donor existing at the time of the gift. She has a right to be heard on the questions as to the amounts and dates of the debts, and the amount of the donor's property at the time. These questions cannot be tried collaterally in an action at law. She can be heard in court on these questions only in a bill in equity. *Gibbons, admr.*, v. *Peeler*, 8 Pick. 254; *Holland* v. *Cruft*, 20 Pick. 321.

2. If the suit at law can be maintained at all, it can be so only after the amounts of the claims against the estate have been fixed in some way so as to be conclusive on defendant, and the amount of assets has been made certain, so that it shall appear, by proceedings duly had, how much of the donation is necessary for the payment of the creditors entitled to impeach the gift. *Holland* v. *Cruft*, before cited; *Caswell* v. *Caswell*, 28 Maine, 232; *Fletcher* v. *Holmes*, 40 Maine, 364.

No representation of insolvency was made before the commencement of the action. No proceedings by suit or otherwise had been had to fix the amount of claims against the estate, nor does it appear that the administrator had returned an inventory or settled an account by which the amount of the assets can be ascertained. Further, there is no offer to prove that any debt, existing at the time of the gift, is now outstanding, or was so at the decease of plaintiff's intestate.

3. But if the action can be maintained on the facts, it should be abated on the motion filed on the ground that the affidavit of plaintiff, necessary to authorize defendant's arrest, was certified by the attorney who made the writ and entered the suit in court.

The attorney is interested, and incompetent to certify the oath.

APPLETON, C. J.   This is an action of assumpsit, brought by the administrator of the estate of William Woodman, to recover the sum of seven hundred dollars, given by said Woodman to the defendant a few days before his decease.   The plaintiff offered to prove the insolvency of Woodman at the date of the gift, and that the estate was rendered insolvent and was so insolvent.

The presiding justice ruled upon the facts offered to be proved that the action was not maintainable.

. The gift, as between the parties thereto and the heirs of the donor, was valid.   So far as the rights of prior existing creditors are concerned it was fraudulent, or evidence from which the inference of fraud must be drawn.

The estate being insolvent, the creditors defrauded cannot institute suits against the donee for the recovery of the money given. The administrator must act for them.   He is trustee.   It is his duty to protect and enforce their rights.   As to them the gift is void, and the money given should be in the hands of the administrator, as a part of the assets of the estate for the payment of its debts.

Assumpsit for money had and received is an equitable action. The gift being void, so far as the plaintiff acts for the creditors, he can recover on the money counts the amount in the defendant's hands, to be appropriated with the other property of his intestate, for the payment of the creditors entitled thereto and the necessary expenses of administration.   The balance, if any, will belong to the defendant.   Though the gift may be void as to creditors, it is valid as against the heirs of the giver.   *Abbott* v. *Tenney*, 18 N. H. 110.   It is for the administrator to show the amount required to pay the debts due from the estate to its several creditors, defrauded by his intestate, for that is all which he is entitled to recover.   The remainder, if any there be, belongs to the defendant.

The motion to dismiss cannot avail the defendant.   It is not entitled in this suit.   It will apply as well to any other cause on the docket as to this.   It is not stated in the bill of exceptions that the oath was administered by the plaintiff's attorney, and if it had

been, it is not readily perceived why he was not as competent to administer it as any other magistrate. *Exceptions sustained.*

KENT, J., concurred; and DICKERSON, BARROWS, and DANFORTH, JJ., concurred in the result.

TAPLEY, J., dissented and delivered the following opinion, stating the grounds of dissent.

This case shows that William Woodman in his life-time gave the defendant, in consideration of love and affection, the sum of seven hundred dollars. The plaintiff is the administrator of the estate of said Woodman, now deceased, and brings an action of assumpsit upon an account annexed in these words:

"1868.        Addie C. Weeks to William Woodman,        Dr.
Dec. 23.            To cash had and received,   .        $700.00."

Woodman died the 25th day of December, 1868. There is also a general count for money had and received, both counts averring a promise to the intestate in his life-time. To sustain his action the plaintiff offered " to show by proper evidence that the estate of said Woodman was rendered insolvent, and to prove that in fact the said Woodman was insolvent at the time of the gift and of his decease." The presiding judge ruled "that an action at law cannot be maintained on the facts offered to be proved." In considering this ruling it may be well to consider first the condition and rights of the donor and donee after the gift was made, and during the life-time of the donor.

There can be no question that the donor parted with all his title and interest in the money by the gift. This has been too often settled to need any citation of authorities. In an hour after had he repented of the gift he could not have recovered it back. There was no promise, express or implied, or raised by law, to repay him. He could not maintain an action of assumpsit for it, nor could any other person in his name do it. There was nothing upon which to base assumpsit, or indeed to maintain any form of action for it. He had no cause of complaint to bring before the court.

If this plaintiff can maintain assumpsit, it must be upon some other promise than that made the deceased, for there was none made to him; yet we find this declaration based solely and entirely upon a promise alleged to have been made to the intestate in his his life-time and broken in his life-time. These are the allegations and none other, and it would not seem to admit of argument that this action cannot be maintained unless there was a promise, express or implied, or one raised by law, to pay the intestate this sum.

If there was such a promise, why could not the donor in his life-time maintain a suit upon it? If there was none, how can the administrator maintain a suit upon such allegations? The difficulty with the plaintiff's case is a failure to distinguish between a promise of repayment and a liability upon the part of the donee to have the property seized and applied in the extinguishment of certain claims against the donor.

The death of the donor creates no promise upon the part of the donee to the dead donor. His death neither enlarges nor diminishes the claim any creditor may have upon the fund. It does not increase or diminish the interest the donee takes in the fund. The donor is a stranger to it from the time he parted with his interest in it.

Second. What were the rights of third parties?

The transfer being made upon no other consideration than love and affection, and being absolute, not held in trust by the donee for the donor, may have been void as to creditors of the donor existing at the time of the transfer. Assuming it to be so, the donee took it subject to a right in them to seize it and apply it in satisfaction of their claims. They could or not proceed against this fund as they chose. It was a personal right to be exercised or not. It was not one common to all the creditors. The relation of debtor and creditor must be shown to exist at the time of the transfer to entitle the party to proceed against the fund, and the donee held it subject only to the right of such persons to seize it by process of law and apply it to such claims. When seized, the creditor could make no other application of it than to indebt-

edness existing at the time of the transfer, whatever other claims he may have had. In such a proceeding he is dealing with the property of the donee, a person who has a perfect title against all claims except those existing at the time he took it.

In the life-time of the donor the proceeding must be by attachment of the property thus held. If the property be such as can be come at to be attached in specie, and manually, it must be so done; if it be such as cannot be reached in this way it may be reached by our process of foreign attachment. The remedy is against the fund and not against the person holding it. No creditor in the life-time of the donor could maintain assumpsit against the donee for the money. He had simply a right to seize the property, the gift notwithstanding. There was no promise existing between the creditor and the donee, and indeed, as before remarked, no promise between the donee and any one else. He took the property, with the right of the creditor still existing to seize it, for his demand, upon execution process.

As between the donor and donee the consideration is a good one, and the transaction gives the donee as good and as sacred a right to the property as that by which any individual holds his possessions. She has as much claim upon the law and the courts for its protection as she has for any other property she possesses. Subsequent creditors have no more legal or equitable claims upon this property than have entire strangers to the estate, and they will not be allowed to obtain by indirection that which the law forbids them to get by direction. They cannot compel the prior creditors to look to this fund in order that they may hold the intestate's estate for their own benefit. All the creditors alike have a claim upon the estate of the deceased, and should that prove deficient, the prior creditors may recover their balance from any fund thus disposed of. The only ground upon which they can look to such a fund is that the disposal of it was without a valuable consideration and to their injury. It is not to their injury unless the estate proves insufficient to meet their demand, and it is only to their injury to the extent the estate fails to pay. If these

proceeds were put into the common fund, and the estate of the intestate increased to that amount, it would inure to the benefit of all the creditors, disregarding the distinction between prior and subsequent creditors. If it was seized upon by the administrator and applied to the payment of prior claims, it would thus inure to the benefit of subsequent creditors, and take from the innocent and meritorious donee funds of her own to pay liabilities arising long after the gift. By the death of the donor, subsequent creditors acquire no interest in such property they did not before possess. They have no greater claims upon the property than they had in the life-time of the donor, and that is none at all.

There was no legal duty devolving upon the intestate in his life-time to recover back the money for the benefit of his creditors; as we have seen before, he could not do it. The law would not aid him in so doing. It lent its aid only to those who were injured by the transaction; those who had a claim upon the fund when it was transferred. The community of interest in the fund was solely in the donee and prior existing creditors. They were the only parties having any interest at all in the fund. The deceased, after the gift, had not the most remote interest in it, nor any person who thereafter became a creditor. As to these the right of the donee is as clear, legal, and equitable, as that possessed by any member of the court to his property.

By pursuing the inquiry concerning the rights of the donee and the rights of creditors a little farther we shall discover some of the embarrassments attending the mode of procedure adopted in the case at bar. As we have before seen, the intestate parted with all his interest in the property, and the defendant took it, discharged of every claim save that of creditors. The possession of the intestate in his life-time was rightful, and the possession he conferred by the gift and delivery was rightful. She was no trespasser, but the owner in possession, subject to the right of certain persons by process of law to seize. She was not holding in wrong. To be dispossessed of this property any person claiming it must show his right to it. He must prove he is a creditor and was a

creditor at the time of the gift. The fact of an existing *bona fide* claim must be established by legitimate evidence. It must be established on the issue between the creditor and the person holding the property. *Miller* v. *Miller*, 23 Maine, 22. She has a right to contest the claim, and contest any allegation of its existence prior to the gift. Now, suppose in the case at bar there are fifty in number of these claims (and we know nothing of their number), must not those claims be proved before the defendant is required to yield her property to the claimants? Is it sufficient that they shall be settled upon *ex parte* hearings? Shall she have no voice in the investigation? Must she part with her property upon the mere claim of a party? She is directly interested in the inquiry, both as to the legitimacy of the claim and the time of its origin. It would seem to be very clear she must have the right to be heard upon all these matters, and that she cannot be concluded without the opportunity of contesting the claims that may be presented against her property. To exclude her would render her liable to such injustice as the law never casts upon a party. If she has a right to be heard and contest the claim, both as to its genuineness and its origin, can she be called upon to do it with fifty claimants, in an action of assumpsit, brought by the administrator upon an account annexed, based on a promise made to the intestate in his life-time; or, upon a still more general money count, for money had and received to the intestate's use, and a promise to repay to the intestate in his life-time? Such a proceeding, to say the least of it, would be a novel one. What notice would such a writ and declaration as that, in the case at bar, give her of the claims intended to be proved, or the ground upon which she was called upon to pay seven hundred dollars? How could she be prepared to meet the claims thus made against her? And suppose the writ was different from that now presented, and such as it might be made by amendment, if amendable, and it averred that some twenty or fifty individuals were creditors, naming them and their claims, and that they were creditors at the time of the gift, shall each of these several creditors come into

court under such a writ, founded upon such alleged promises as we have in this writ, and maintain and establish his claim against the intestate ? Upon a plea of never promised, made by this defendant in a suit by this plaintiff, all manner of claims and defenses to claims between third parties are to be tried. Shall the jury render a verdict on each claim, finding both facts, viz. : its genuineness and its priority of origin ? Find in one case a verdict for the claimant and in the other against him ? Some may have claims against the estate, but not against the fund; all these must be settled. Here would seem to be difficulty enough, but it will at once be perceived that claimants at once become contestants, where the fund is not large enough to cover them all. Each would be interested to reduce the other's claim, and each to defeat the claim of its priority. A multitude of questions would be presented showing the impracticability of such a procedure.

Again, in such an investigation, the several parties, claimants under our law, would be witnesses in their own behalf, while in pressing their claim against the administrator they would not. They might be able to make a claim when proved as a collateral matter between the administrator and this defendant, and be wholly unable to do so in a direct issue with estate. As to this defendant it would be a claim, and as to the estate it would not. Suppose the administrator should leave out a creditor whose claim was in fact an existing claim at the time of the gift, does he become responsible for that claim ? Suppose he proceeds upon the general allegation that the estate is insolvent, and was insolvent when the gift was made, and is then held entitled to receive the fund, shall he then, upon his own mere motion or judgment, determine conclusively upon this defendant that A. and B. are prior creditors, and determine conclusively upon C. and D. that they are subsequent creditors and entitled to no part of the fund ? The law invests him with no such power. His powers are not judicial. He cannot thus settle the rights of parties. Neither will the law impose upon him the other alternative of paying or withholding at his peril. The truth is, such claims, viz. : those against

property in which the deceased parted with his interest by a *bona fide* gift, are mere personal claims, to be made and enforced by the persons who have the right, and are in no sense claims held by the estate, or for which the estate is in any wise responsible.

If it be said these questions may be settled by the commissioners of insolvency, it may be answered for this case that they have not done so; but inasmuch as proceedings in insolvency may go forward before the decision is announced, and inasmuch as the question is one important in practice, a few suggestions upon the proposition may be proper.

The first apparent answer is that they are charged by law with no such duties, nor clothed with powers adequate to their performance. Their powers and duties are specifically defined. They are not a court of general judicial power, but exist for a certain specified purpose. It is no part of their duty to ascertain and adjudicate upon the rights of particular persons to any particular property, over that of others. They are not charged with the duty of determining whether claims are or not, with reference to any conveyance or transfer, prior or subsequent. They do not determine whether or not an estate is insolvent. They settle the amount due each claimant from the estate.

The question involved in the case at bar is an important one to persons holding property, and upon both issues that may be raised the evidence may be of such a character as to require an investigation in, and the decision of, a court of last resort. If proceeding were had in such cases before the commissioners of insolvency this could not be done. It is only the administrator, the creditor, and the heirs at law who have a right to appear and contest the claims, and only those can appeal, and the decision made cannot reach a vital question, viz.: that of prior or subsequent origin of claim. This defendant being neither administrator, creditor, or heir at law would be a stranger before them and consequently unaffected by their proceedings.

In the case at bar, as before remarked, no such proceedings appear to have been had or instituted. It simply appears that the

·estate had been rendered insolvent, and the plaintiff offered to prove that it was in fact insolvent.   The inference from this is very strong that it had simply been represented insolvent.   If proceedings had been instituted before commissioners appointed by the court of probate, and the issues necessary to be found had been duly passed upon and adjudicated by a board having the legal power and authority so to do, the inquiry might well be made . if these facts should not be averred in a proceeding founded upon them.   If they are a necessary prerequisite, must not such facts appear by allegation in the pleading ?   Would it be quite sufficient to proceed upon an allegation of a promise never made, and not implied or raised by law ?

Another inquiry suggests itself and that is, whatever the form of remedy, what has the administrator to do with the matter ?   It is a proceeding against property the intestate had at his decease no interest in, and property that has never to come to the possession of the administrator for the estate.   It is simply property some of the creditors may seize for their own benefit, a security they have beyond that found in the assets of the deceased.   It is the duty of the administrator to administer upon the estate of the deceased.   It is not his duty to administer upon property in which the deceased had no interest at all ; upon property he had parted with all interest in.   It is his duty to enforce all the claims the deceased might if he was living, and discharge all obligations he was in duty bound to do, so far as assets come into his hands, and if creditors have a claim upon other property or upon other persons for the security or liquidation of their demands, he is not bound to pursue that property and those persons for the creditors. Each creditor must look for himself to any means he has beyond that possessed by the deceased to liquidate and discharge his claim.

Suppose the creditor holds the guarantee of a third person, for the payment of the claim he holds against the intestate, must the administrator pursue that guarantee for the creditor to pay any balance the assets in his hands fail to meet ?   Clearly, that is no

part of his duty, nor is he authorized so to do, if disposed to, at the expense of the estate. When he has distributed that which the deceased debtor left, as required by law, he has performed his duty, and if the creditor has a claim upon some other fund for the balance he must look after it himself. If the guarantee was a mortgage the administrator would have no power or right to proceed against that property to pay the balance.

He is not bound to sue indorsers upon the deceased's paper for the benefit of the creditor. They constitute a security the creditor holds beyond the property left by the deceased, and a security the administrator has nothing to do with. He administers upon that which the deceased left. He demands that which the deceased could demand, and he pays and discharges, as far as assets will permit, all that the deceased was bound to pay and discharge. He is in no sense the representative of the creditors, and in assuming that he is lies the cause of some diversity of opinion as to the remedy that may be pursued in cases of this kind. He is the representative of the deceased alone. That he will do that which the deceased was by law bound to do for the benefit of the creditors he is required to give bond to the judge of probate, for their use. He could not act as agent for the creditors in those cases where their interests were not identical, but antagonistic. He could not be their representative in such cases. He could at best but represent a part. In settling the question of a priority or preference of one claim over another to liquidation from a certain fund, interests arise which render such a relation to all the creditors impracticable, if not impossible. The creditors in such cases become contestants. The administrator and creditor are often contesting and adverse parties in court. They are always so before the commissioners of insolvency, and each may appeal from their decision made against them and litigate the questions in this court. Every proceeding in probate court by the administrator must be after due notice given the creditor, that he may appear and oppose the proceeding, and any creditor has the right to appear and contest the claim of the administrator. He is to every

intent and purpose the representative of the deceased, and creditors may require of him, as such representative, to do that which they could require of the deceased, so far as assets will permit him to respond, and if he does not he becomes liable upon his bond. No creditor can compel him to institute proceedings to defend against those instituted. He does this or not as he chooses. If he fails to act when he should and as he should he becomes responsible to the creditors upon the bond he has given. Holding the personal estate of the deceased for the benefit of the creditors he may so far be said to be their trustee. He may be said to be a trustee of the heir to the same extent he is to the creditor, and that is to the extent of personal assets received. These he must hold for and dispense to those entitled by law to receive them, whether it be heir or creditor, and if he give to one more than he is entitled he is liable therefor to the other. He is to all intents and purposes the personification of his principal, the intestate, charged with the duty of immediately performing all the legal obligations resting upon his principal. Beyond this he is not required to go.

In those cases where the intestate had not parted with the title to property, but had secreted it in the hands of the party called to account, in order to keep it beyond the reach of creditors, the remedy sought in the case at bar might avail. In such, the title still remaining in the intestate would pass to the administrator, if personal, and any promise arising from the circumstances to the intestate might be enforced by the administrator. But where all interest has passed irrevocably, and there is no promise, express or implied, the rights of creditors arise under the law derived from the Statutes of Elizabeth concerning fraudulent and voluntary conveyances. Such conveyances under those statutes were void and of none effect only as against creditors. In the leading case in this State upon that subject, *Andrews* v. *Marshall*, 43 Maine, 272, Mr. Justice Cutting says : " In *Osborne* v. *Moss*, 7 Johns. Rep. 161, citing *Hawes* v. *Loader*, Cro. Jac. 270, and Yelv. 196, as also in *Anderson* v. *Roberts*, 18 Johns. Rep. 527, it was decided that if

goods were conveyed to defraud creditors the conveyance was void as against them, but remained good as against the party, *his executors, and administrators.*" This is the well recognized doctrine. The sale or gift binds the party making it and his representative.

In *Brownell* v. *Curtis*, 10 Paige Chancery Rep., the cases referred to by Mr. Justice Cutting are referred to as establishing the doctrine of the common law and the law of the Statutes of Elizabeth adopted as the common law of this country, and the chancellor says, " a similar decision was made by the court of appeals in Maryland in the case of *Dorsey* v. *Smithson*, 6 Har. & Johns. Rep. 61."

The case of *Osborne* v. *Moss* was a case where the defendant justified the taking of goods, as administrator of the former owner, upon the ground of " fraud between the intestate and the plaintiff to cheat the creditors of the intestate." The court say the case of *Hawes* v. *Loader* " is an answer to this defense and completely destroys it." The administrator farther suggested that he was also a creditor of the intestate. The court say " this does not alter the case ; as creditor he had no right to take the goods without suit." That his remedy as creditor would have been to have sued the plaintiff for his debt and charged him as executor *de son tort.* This he could have done, notwithstanding he was administrator ; and the case of *Ashley* v. *Child*, Styles, 384, is expressly to this point.

Upon recurring to the report of the case of *Hawes* v. *Loader*, it seems Loader was administrator of Cookson. That Cookson in his life-time conveyed certain goods to defraud his creditors, retaining the possession of them himself. While thus in possession he died intestate. The grantee of the goods (Hawes) brought an action against the administrator, into whose hands the goods came, for the goods thus conveyed ; the administrator pleaded the Statute of 13 Eliz. of fraudulent deeds of gift, etc., and the fraudulent conveyance and the indebtedness of the deceased. There was a demurrer to the plea, and it was adjudged for the plaintiff on several grounds, one of which was, " that the defend-

ant is not such person as is enabled by the Statute 13 Eliz. to plead this plea; for the deed is made void against all creditors, etc., but it is not made void against the party himself, *his executors and administrators*, but as against them it remains a good deed of gift."

In this case it was also held that the goods, as to creditors, "are liable in the hands of the plaintiff as executor *de son tort*, if the deed of gift be fraudulent."

This same doctrine is declared in 1 American Leading Cases, 43, in a note to the principal case reported. It is there said "the general principle is clear that a fraudulent conveyance is good between the parties and their representatives; and that the fraudulent donee may recover the property from the executor or administrator, even if the latter be a creditor. The creditors also have their remedies independently of the administrator; for a fraudulent donee taking or keeping possession of the goods is at common law liable to the creditors as executor *de son tort;* and creditors are entitled to go into equity against the property in the hands of the fraudulent grantee." " The better opinion is, that at law such property is not assets from the testator's death, for the profits of which in his hands from that time the administrator is responsible; or which he can recover, as administrator, from the fraudulent grantee."

In the case of *Allen* v. *Kimball*, 15 Maine, 116, such an action was sustained against a fraudulent grantee who had sold, after the decease of the fraudulent grantor, the property thus conveyed to him. This case recognizes very clearly this remedy of a creditor against a fraudulent grantor.

In an earlier case *Morrill* v. *Morrill*, 13 Maine, 415 such an action was not sustained, because the sale and disposition of the property by the fraudulent grantee took place before the death of the fraudulent grantor; therefore the grantee was not an intermeddler after the decease and in no wise executor in his own wrong. The court say the doctrine has never been carried so far as to unravel transactions in regard to property of this description, which had

been lawfully sold and disposed of before the decease of the supposed testator. The creditors should have looked up the property at an earlier period."

In the case cited from Maryland it is held, "the executor of the donor has no right to the goods the donor has fraudulently conveyed, and is estopped to allege that the deed is a fraud upon creditors. The property is not assets in his hands and he is not accountable for it as executor."

In a case in Alabama it is held that "if one in his life-time makes a fraudulent conveyance of his property, his grantee may, after his death, be charged as executor *de son tort*, although there is a lawful representative, because the latter being bound by the fraud of his testator or intestate cannot be charged at all in his representative capacity." *Simonton* v. *McLane*, 25 Ala. 353.

As to the liability of the fraudulent grantee or donee as executor *de son tort* to the creditor, see also in North Carolina, *Bailey* v. *Miller*, 5 Iredell, 444; *McMorine* v. *Story*, 3 Dev. & Batt. 87; *McMorine* v. *Story*, 4 Dev. & Batt. 189; *Norfleet* v. *Reddick*, 3 Dev. & Batt. 221; *Bayner* v. *Robinson*, 3 Dev. & Batt. 439; *Sturtevant* v. *Davis*, 9 Iredell, 365. South Carolina, *Tucker* v. *Williams*, Dudley, 329. Georgia, *Howland* v. *Dews*, R. M. Charlt. 383; *Clayton* v. *Tuck*, 20 Geo. 452; *Gleaton* v. *Lewes*, 24 Geo. 209. Alabama, *Densler* v. *Edwards*, 5 Ala. 311; *Simonton* v. *McLane*, 25 Ala. 353. Kentucky, *Hopkins* v. *Tower*, 4 B. Monroe, 124. Missouri, *Foster* v. *Nowlan*, 4 Mo. 18. Maryland, *Dorsey* v. *Smithson*, 6 H. & T. 61.

Numerous other cases might be cited showing the practice of other courts to be the same as that adopted in this State in the case of *Allen* v. *Kimball*.

This practice seems to be sustained not only by this great weight of authority, but would seem to be almost the necessary result of a correct construction of the law concerning fraudulent conveyances arising under the Statutes of Elizabeth.

The legal proposition made in *Andrews* v. *Marshall*, before referred to, that such conveyances " remain good as against the party,

his executors and administrators," is well supported by numerous
decisions, ancient and modern, and by a reading of the statutes be
fore referred to.    See 1 American  Leading  Cases, 45, and cases
cited in note, p. 75.

In some cases bills in equity, in the name of the administrator,
have been sustained to set aside gifts *donatio causa mortis,* the in-
terests of all the creditors being identical.    This method of pro-
ceeding " has been much disputed," and is subject, indeed, to much
criticism when attempted to be sustained upon principle.

Where the interests of the creditors are identical, there is per-
haps no impracticability or inconvenience in allowing the creditors
to move in equity in the name of the administrator.

In such cases, however, he proceeds not as administrator bind-
ing his sureties upon his administrator's bond, but as a trustee of
the creditors.

If the interests of the creditors are not identical many serious
embarrassments may be supposed in such a proceeding.

In *Caswell* v. *Caswell,* 28 Maine, 232, the remark is made by
the learned judge who drew the opinion, that the "administrator of
an insolvent estate, as trustee of the creditors, is entitled in proper
cases to the aid of this court, as a court of equity, to obtain proper-
ty belonging to the intestate, which creditors may lawfully claim,
to apply in satisfaction of their debts where the same is held in
fraud of their just rights.    And the court has power, upon satis-
factory evidence that a conveyance was made by the intestate for
the fraudulent purpose of delaying or defeating creditors of the
grantor, to pronounce the conveyance inoperative and void, and
thereby enable the administrator more effectually to obtain means
to be appropriated in discharge of the debts."

How far this general proposition can be maintained or how far it
is practicable to proceed in equity as administrator, may admit of
some doubt.    The statutes of this State authorize administrators to
sell lands which the deceased has fraudulently conveyed to defraud
creditors.    R. S., c. 71, § 22; R. S. of 1857, c. 71, § 22; R. S.
of 1841, c. 112, § 31.

The remedy in such cases, by the statute, seems to be to sell the estate which is fraudulently conveyed, and leave the purchaser to seek any remedy he may need. If the administrator should proceed and the conveyance be pronounced void entirely, it is no longer a conveyance fraudulent as to creditors, but then stands as no conveyance at all, and subject to such a distribution or inheritance precisely as any other estate not thus attempted to be conveyed.

It seems to me that a careful consideration of the statute will lead to the conclusion that its design was to provide for a summary and safe mode of selling the interest creditors had in the land, leaving the purchaser to seek any remedy he might afterward need and afforded by the law. It may well be supposed that the Legislature thought it more wise and prudent to do so than to allow administrators to enter upon a litigation that might consume all the estate left and result in the end unsuccessfully. It would indeed, we think, be a dangerous policy, and one which might well be avoided by authorizing the sale of the interest in the estate which might ultimately be found in the creditors.

It will be remembered that in none of the sales of administrators does the law require a warranty of title in the deceased. It is such only as he has, if any, that the administrator undertakes to sell, and he only warrants the regularity of his proceedings. There would be very little propriety in requiring him to go forward in the very class of cases doubtful, and establish a title at the expense of that which is not doubtful.

These statutes, however, refer to lands and do not in terms reach personal estate ; and personal estate, in which the deceased himself had no interest, can receive no aid from these provisions, however we may construe them.

If each of the creditors upon the decease of the debtor took a separate, vested, ascertainable interest in the property, it is easy to see how a bill in equity could be maintained by making such creditors respondents as did not desire to be complainants, and thus have them all before the court to settle their several interests.

But where they have no interest in the property of any kind, but simply a right to seize it and sell if they choose in the life-time of the debtor for the extinguishment of their demand, and the death of the debtor in no way enlarges their rights concerning it, more difficulty is perceived in allowing a bill in equity to be maintained at the expense of those not desirous of avoiding the sale, as well as of those who may desire so to do. This idea seems to again suggest to us that the right the creditor has to treat the sale invalid is purely personal, and he cannot be required to assume this position in relation to it unless he chooses.

As has been before suggested, the rights of prior and subsequent creditors may be materially different, and in such case it would be very difficult for the administrator to serve both parties in a bill, and equally difficult for both classes to proceed together as complainants, or, indeed, as respondents. The gist of the thing seems to be that it is not a fund of the deceased nor one belonging to the estate as an estate, but is one creditors, any one or more, may look to for the purpose of extinguishing any demand they may have.

Another question of practice of some importance might arise, and that is, whether or not the creditors' claims must be established in a court of law, before the creditors could proceed by bill in equity to obtain the fund. This would seem to be necessary. It would be very difficult in a single bill to settle a hundred different claims, and that, too, where the claimants, who are also complainants, are adversely interested against each other.

If the bill was prosecuted by the administrator, it would be equally necessary that these claims should be settled at law, for, as before remarked, the administrator could not well represent different and conflicting interests. It would indeed be serving two masters whose interests were adverse. And were all the claims reduced to judgments, still a question of priority of claim to the fund may arise, and here again the interests of the judgment creditors might be antagonistic.

Many other difficulties might be suggested of more or less force in the way of proceedings by bill in equity, either in the name of the administrator or by general creditors' bill.

McLean v. Weeks.

The idea at every point of the argument presses itself, that it is a mere personal privilege any creditor may avail himself of to use the fund to extinguish his claim, and not one he is bound to follow.

The gift being good as to all others, remains undisturbed unless he see fit to disturb it.

If it should be regarded as assets falling to the administrator and vesting in him for the benefit of the creditors, it might well be argued that it becomes his duty to collect such before resorting to the realty, and the heir might insist that he should do so, to save the realty for him, and thus one as to whom the gift is valid might derive an advantage from the fact there were persons against whom it is invalid. It must be remembered that a gift or fraudulent sale made with a view to defraud creditors is equally invalid as to such creditors, whether the party be or not insolvent. It is the purpose and design of the transfer that affects its validity.

It does not become necessary in this case to determine whether or not in any given case a bill in equity could be maintained, nor indeed what remedy remains for the party. The simple question here to be decided is whether this action can be maintained upon the facts proved and offered to be proved, and that is all that is here decided. The suggestions here made are made in view of other possible ulterior proceedings, by way of suggesting some of the difficulties which may be found to attend a proceeding in equity, and aiding the party, in some degree, in the solution of the question of what in fact the true remedy is.

Had these questions been fully argued by the able counsel who appear on either side of this case, we might have thought it advisable to determine the question and make this case a precedent for future practice.

Perhaps the suggestions here made and a farther examination of the question will lead to the conclusion that the right to ignore the sale or gift is a personal right, attaching to each prior creditor to be exercised or not as he chooses, regardless of the wishes of others possessing a similar right, and that when done it must be done on his own motion and responsibility, and that the simplest and most

practicable form for him is that of holding the possessor as executor *de son tort.*

At all events we think this action cannot be maintained, and that the ruling was right.                            *Exceptions  overruled.*