## VAN SANDT v. CRAMER, ADM'R.

1. **Administrator:** ACTION AGAINST: EVIDENCE: PERSONAL TRANSACTION. In an action against an adminstrator for services rendered the intestate, where the services and their value were admitted, and payment was not claimed as a defense, it was not necessary for the plaintiff to prove that he had not been paid: but had the question of payment been in issue, the plaintiff's testimony would not have been admissible, under section 3639 of the Code.

2. **Evidence:** CONTRACT: EX PARTE STATEMENTS. In such action, it was incompetent for plaintiff to prove by strangers his *ex parte* declarations to them that he intended to charge the intestate for his services. Such declarations could not bind the intestate.

3. **Contract for Support:** MEMBER OF FAMILY: CONSIDERATION. Where one for a series of years supports his wife's mother as one of his own family, without any agreement for compensation until a few weeks prior to the mother's death, when he informs her that he will charge her at a certain weekly rate from the beginning, and she then promises to pay therefor, such promise is without consideration, except as to such services and support as are rendered subsequently to the promise.

4. ———: EVIDENCE ESTABLISHING. Upon a review of the evidence in this case (see opinion), it was *held* that a contract to pay for the support of defendant's intestate was clearly made out, and that the verdict of the jury to the contrary should have been set aside.

5. **Practice in Supreme Court:** CERTIFYING EVIDENCE: EFFECT OF AMENDED ABSTRACT. Where appellant's abstract fails to show that it contains all the evidence, the omission is cured by the appellee's filing an amended abstract, setting out certain evidence alleged to have been omitted from the original abstract, without claiming that the two abstracts do not contain all the evidence.

*Appeal from Page Circuit Court.*

TUESDAY, MARCH 20.

PLAINTIFF filed a claim against the estate of Polly Heald, of which defendant is administrator, for $241.60, on account of board, nursing and medical treatment to the intestate, from January 1, 1868, to October 25, 1879. The claim was admitted by the administrator's indorsement thereon. But it was contested, and came up for adjudication by the Circuit Court

sitting as a court of probate. The issues of fact were submitted to a jury, who found specially that plaintiff is entitled to $100 for support of the intestate during the last four weeks of her life, under an agreement between her and plaintiff. The claim was allowed by the court for the amount specified in the special findings of the jury. The plaintiff appeals.

*Hepburn & Thummel*, for appellant.

*W. W. Morseman* and *N. P. Moore*, for appellee.

BECK, J.—I. The evidence shows that the intestate was the mother of plaintiff's wife, and for many years, and up to her death, at the age of ninety, she lived in the family of plaintiff and received all proper care and attention for a person of her age and infirm health. Plaintiff is a physician, and treated the intestate during her illness, which was frequent.

The defense to the claim is that the intestate was a member of plaintiff's family, and all his services were rendered as such. Plaintiff relies upon an agreement and understanding between himself and the intestate, that he should receive compensation for the services charged in his claim. There is no denial of the services which are the foundation of plaintiff's claim, nor dispute as to their value.

II. The plaintiff proposed to prove by his own testimony that he had never received payment for the services rendered by him. The evidence was rejected on the ground that plaintiff, under the statute, is not competent to testify to the fact. We think the ruling correct, regarding the fact of payment as in issue in the case. The payment was a personal transaction between the plaintiff and the intestate which, under Code, section 3639, cannot be shown by plaintiff's own testimony. But there does not appear to have been any issue in the case involving payment to plaintiff, nor did defendant offer any evidence tending to show payment. In order to establish his claim, the plaintiff was not required to prove that it had not been paid. He,

therefore, could not have been prejudiced by excluding the evidence offered.

III.   The plaintiff offered evidence proposing to show his declaration about the time he began to render the services for which he claims, to the effect that he intended to charge the intestate for them.   This evidence was properly excluded on the ground that plaintiff's declarations alone would not tend to establish a contract with the intestate express or implied.

2. EVIDENCE: contract: ex-parte statements.

IV.   An instruction to the jury in the following language is made the ground of an objection by plaintiff:

"If you find from the evidence that the deceased was the mother of plaintiff's wife, and that plaintiff furnished and provided support for deceased as one of his own family during the period claimed in the statement of plaintiff's claim, and that such support was provided without any agreement or mutual understanding between plaintiff and deceased that the same should be paid for, until within a few weeks prior to the death of deceased, and that then plaintiff told deceased that he should charge her a certain sum per week, beginning with the early part of the year 1868, and that the deceased then promised to pay therefor, such promise would be void for want of consideration, except as to such services and support as were provided after such promise; and the plaintiff cannot recover for the services and support provided before such promise.

3. CONTRACT for support: member of family: consideration.

"But if you find that there existed a prior understanding between the parties that one should receive compensation and the other pay for support, then the subsequent statement or understanding as to amount to be charged from a particular time would not preclude the right to recover upon a former understanding between the parties."

In our opinion the instruction is correct.   If the intestate was a member of plaintiff's family, he was bound under the relation existing between them to render the services in question and he had at no time a claim against her for compensation.

A subsequent promise to pay for them would, therefore, be without consideration. It would be a promise to pay for services which plaintiff, under the relations existing between them, owed the intestate.

V. The testimony of four witnesses establishes, in our opinion, that the services were rendered by plaintiff under an agreement with the intestate for payment, and that she was not receiving these services as a member of plaintiff's family. The testimony consists of declarations and statements made by the intestate at various times from 1869 to about the time of her death. In the absence of conflicting testimony, no other conclusion can be reached than that intestate bound herself, before the services were rendered, to pay for them, and that she was not merely a member of plaintiff's family. We are unable to find in the record any conflicting evidence upon this point. Counsel for defendant point us to evidence which they claim should be so regarded. It is, in effect, that plaintiff attended to intestate's business affairs while she was an inmate of his house, handled her money, and borrowed money of her for which he gave his note, and afterwards made payments thereon. But these facts are not inconsistent with the contract between the parties, which, we infer, provided for payment to plaintiff at the death of the intestate. They rather show fair dealing on the part of plaintiff. They are not, to any extent, in conflict with the evidence establishing plaintiff's claim. All that can be said of them is, that they raise a question as to the probability of the existence of the contract. But they are more than balanced by the fact that the intestate had means amply sufficient to provide for her support, and, therefore, it is not probable that she would be willing to accept, or that plaintiff would be willing to render, the services in question, without an agreement for compensation. We reach the conclusion that the evidence without conflict establishes a contract between the parties. The Circuit Court upon this ground should have set the verdict aside and granted a new trial.

<div style="margin-left:2em; font-size:small;">4. ——: evidence establishing.</div>

Van Sandt v. Cramer, Adm'r.

VI. Counsel for defendant insist that the abstract fails to show that it contains all the evidence in the case. It contains no statement to the effect that all the evidence is set out therein. A copy of the reporter's certificate is printed, but the abstract contains no averment that all the evidence certified by the reporter is found therein. We have held more than once that an abstract in this form cannot be regarded as presenting all the evidence.

5. PRACTICE in supreme court: certifying evidence: effect of amended abstract.

VII. But defendant filed an amended abstract setting out certain evidence alleged to be omitted from the original abstract, without a statement or claim that the two abstracts together do not present all the evidence. He cannot now urge that all the evidence is not before us. See *Starr v. City of Burlington*, 45 Iowa, 87; *Cross v. B. & S. W. R'y Co.*, 51 Iowa, 683; *Wells v. The B., C. R. & N. R'y Co.*, 56 Iowa, 520.

6. SAME.

The case is unlike *Hall v. Harris et al.*, 13 N. W. Rep., 665,* wherein we held that an amended abstract, to correct a specified error in the original abstract, and expressly declaring that, with the amendment, all the evidence is not presented by the two abstracts, will not be held to admit that all the evidence is presented by the abstract and amended abstract. As defendant's amended abstract fails to make the statement here indicated, it will be understood to supply all the evidence not found in the original abstract.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

REVERSED.

---

* A re-hearing of this case was granted, and it will appear with the opinions of the September Term, 1883, at which term a supplemental opinion was filed.