LAURA MALLOW v. SIMON WALKER, Appellant. JOHN C. STEVENSON, Administrator of the Estate of Gamaliel Walker, deceased, v. SIMON WALKER, Appellant. JOHN MALLOW, Appellant, v. J. C. STEVENSON, Administrator, substituted for Gamaliel Walker, deceased. SIMON WALKER, substituted for GAMALIEL WALKER, deceased, v. JOHN MALLOW, Appellant.

**Fraudulent Conveyances:** CONSIDERATION OF FUTURE SUPPORT. Where one conveys all his property in consideration of future support, such conveyance is invalid as to his creditors.

ADMINISTRATOR MAY SET ASIDE. The administrator of an estate may sue decedent's grantee to set aside a conveyance as in fraud of creditors.

*Necessity of reducing claim to judgment.* In an action by an administrator to set aside the voluntary conveyance of his' intestate, which renders his estate insufficient to pay the debts of the intestate, it is not necessary that the creditors who are prejudiced by such conveyance should have already reduced their claims to judgment.

GRANTEE ENTITLED TO SURPLUS ABOVE DEBTS. Where a conveyance by deceased of all his property in consideration of future support had rendered him insolvent, so that the conveyance was invalid as to his creditors, the grantee was entitled to the residue of the property after the payment of the debts.

**Evidence:** PERSONAL TRANSACTIONS WITH A DECEDENT. Code, section 4604, declares that no party to an action nor one interested in the event shall be examined as a witness as to any transaction between him and one deceased against the executor, administrator, heir, next of kin, assignee, legatee, devisee, or survivor. *Held*, that the statute does not prevent a witness from testifying as to a conversation between deceased and another in the presence of the witness, in which the witness took no part.

PROOF OF AGREEMENT TO PAY FOR BOARD. Deceased and his wife went to live with their daughter and her husband under an arrangement whereby deceased was to build an addition to the house, and furnish a part of the family expenses, which arrangement was carried out until the death of deceased's wife, from which time he continued to live with the daughter, without paying board or furnishing supplies. He often stated that the daughter's family would be paid for his keeping, and the daughter testified to such conversations between her father and her husband. Held, sufficient to show that the son-in-law and daughter were to receive compensation for deceased's board.

MENTAL INCAPACITY: Destruction of will. Where a testator destroys his will, and executes a deed to one other than the devisee, because of the formation of a sudden unjustifiable antipathy to the devisee, it is insufficient to show mental incapacity.

UNDUE INFLUENCE: Burden of proof. Where one seeks to establish undue influence, in order to set aside a will or conveyance, the burden of proof is on him.

Degree and character of proof required. Where one seeks to set aside a conveyance on the ground of undue influence, the evidence must show an influence so great as to overcome the will of the grantor or testator.

Same. It must be shown that the undue influence was exercised at the time the act referred to was done.

Same. That the deed was executed by reason of the influence resulting from affection is insufficient if the free agency of the testator or grantor be not impaired.

Same. That the distribution made by a testator of his property among his children by a deed is unreasonable or unjust, does not alone establish undue influence.

Prior declarations of testator. Prior declarations of an intention of a testator contrary to a subsequent disposition by deed cannot be shown to establish undue influence as to the disposition made.

Presumptions concerning parent and child. Where a deed is attacked on the ground that the provision was obtained by undue influence, the fact that the provision was between a parent and a child raises no presumption that it was the result of undue influence.

*Appeal from Buchanan District Court.—HON. FRANKLIN
C. PLATT, Judge.*

SATURDAY, DECEMBER 21, 1901.

THESE four actions, affecting the distribution of the property of Gamaliel Walker, now deceased, were, by agreement, consolidated, and tried as one equitable action, and a decree was rendered adjusting the various claims of the parties. The real parties in interest are John and Laura Mallow on the one side and Simon Walker on the other. The decree was in some respects favorable to one side in the general controversy, and in other respects favorable to the other, and both sides appeal. Walker will be treated as appellant.—*Reversed.*

*Holman & French* and *E. E. Hasner* for appellant.

*Cook & Leach* for appellee.

McCLAIN, J.—Gamaliel Walker died December 21, 1898, having attained the age of nearly 82 years, and leaving, as his estate, one 40-acre tract of land and a small amount of personal property. For some years prior to August, 1898, he had lived with his daughter, Laura Mallow, and her husband, John, both of them parties in these proceedings. In that month, however, he left the home of the Mallows, and went to live with his son, Simon (the appellant), and wife. While living with the Mallows, Gamaliel Walker had made a will devising the 40-acre tract of land above referred to, and which was then in possession of the Mallows, to his daughter, Laura, but immediately after leaving the home of the Mallows he withdrew this will from the office of the clerk of the district court, where it had been deposited, and destroyed it and thereafter executed to Simon a deed to the 40 acres, in consideration of support for the balance of his life and $200 to be paid to a grandchild. Before the death of Gamaliel Walker, action of replevin was commenced in his name against John Mallow to recover possession of a promissory note executed by said John Mallow

to Gamaliel Walker for $400 of borrowed money, which note it was alleged was wrongfully in the possession of said Mallow. Afterwards Simon Walker, claiming under an assignment of the note from his father, was substituted as plaintiff in this action. Another action was brought by John Mallow against Gamaliel Walker to recover a balance of about $1,200 on an account for boarding the latter and two grandchildren, and for small sums of money advanced. In this action a counterclaim was interposed by the defendant therein for money advanced at various times to the plaintiff to an amount, in the aggregate, of about $2,800. In this action J. C. Stevenson, as administrator of the estate of Gamaliel Walker, deceased, was, after the death of the latter, substituted as defendant. Laura Mallow, after the death of Gamaliel Walker, instituted a suit to have the deed to the 40 acres from her father to Simon set aside as executed without sufficient mental capacity and under undue influence, basing her right of action on her claimed interest in the property to the extent of one-third as heir. Finally, Laura Mallow, then administratrix of her father's estate, brought suit as such administratrix to have the said deed set aside on the same ground, and on the further ground that it was fraudulent and void against creditors, and asked that the property be subjected to the payment of claims against the estate, including the claim of John Mallow for the balance of account above referred to. In this last suit John C. Stevenson, who was appointed administrator instead of Laura Mallow, was substituted as plaintiff.

From the foregoing very brief statement it is apparent that all the controversies involved in these four suits are really between John and Laura Mallow on the one side and Simon Walker on the other, and they will be treated as the adverse parties. It is also apparent that these controversies grow out of injured feelings, as well as injury to property

rights, and that their solution depends to a considerable extent upon evidence of transactions with a person deceased, and upon the competency of the deceased, an old and infirm man, to make disposition of his property as between his heirs; and involve the further question whether such disposition was of his own free will or under undue influence. The conclusions we have reached are by no means entirely satisfactory to us, and yet they are adopted, in the belief that they approximate, as nearly as practicable under the law and the evidence, to the administration of abstract justice. We shall set them out as briefly as possible.

I.   There is much evidence relating to the mental capacity of Gamaliel Walker at the time he destroyed his will and executed the deed to Simon. Without discussing it, we have to say that we agree with the conclusion of the lower court in the holding that want of mental capacity was not shown. Gamaliel Walker seems to have had sufficient mind to determine for himself what he wanted to do, and to carry out his purposes with reference to the disposition of what property remained to him, and it is not for us to pass upon the reasonableness of such disposition. His antipathy to the Mallows, which seems to have been suddenly formed, may have been justified; and, even if unjustified, would not show mental incapacity. The owner of property, having the right to make such disposition of it as he sees fit, is not accountable to any one with reference to the motive which lead him to act.

II.   As to the claim that the deed was procured by Simon from his father by undue influence, it is sufficient to say that no evidence of any such undue influence appears. The burden of proof is on the party seeking to establish the fact of undue influence for the purpose of having a conveyance or a will set aside, and the evidence must show that the influence was such as to overcome the will of the grantor, and to destroy, to some extent at least, his free agency. *McIntire v. McConn,* 28 Iowa,

480; *Orr v. Penningtion,* 93 Va. 268 (24 S. E. Rep. 928).
And it must appear that the undue influence was exercised
at the time the act referred to was done. *Herster v. Herster,*
122 Pa. St. 239 (16 Atl. Rep. 342, 9 Am. St. Rep. 95).
"The fact that the act was done by reason of the influence
resulting from affection or attachment, or a mere desire to
gratify the wishes of another, if the free agency of the party
is not impaired, does not affect the validity of the act."
*Orr v. Pennington, supra.* The mere fact that the distri-
bution made by a parent of his property among his children
appears unreasonable or unjust will not alone establish undue
influence, and prior declarations of an intention contrary to
the subsequent disposition cannot be shown to establish undue
influence in respect to the disposition finally made. *Muir
v. Miller,* 72 Iowa, 585. And see *Pooler v. Cristman,* 145
Ill. 405 (34 N. E. Rep. 57). The mere fact that the provi-
sion complained of is one made as between a parent and child
will not give rise to the presumption that it was the result
of undue influence. While a conveyance from a child to a
parent may sometimes be deemed presumptively invalid by
reason of the influence which the parent is supposed to have
over the child while occupying toward him a confidential re-
lation, this does not apply when the conveyance is from the
parent to the child. *Bauer v. Bauer,* 82 Md. 241 (33 Atl.
Rep. 643); *McColloch v. Campbell,* 49 Ark. 367 (5 S. W.
Rep. 590); *Chambers v. Brady,* 100 Iowa, 622. Even if it
appears that a deed or will is executed at the suggestion or
request of the grantee or devisee, and is prompted by the
influence which such person has acquired by business confi-
dence, or the showing of an affectionate regard, this will not
prove undue influence, unless the freedom of the will has
been in some way impaired or destroyed. *Orr v. Penning-
ton,* 93 Va. 268 (24 S. E. Rep. 928); *Chambers v. Brady,*
100 Iowa, 622; *McCulloch v. Campbell,* 49 Ark. 367 (5 S.
W. Rep. 590). The conveyance to Simon is not shown, there-
fore, to be invalid on account of undue influence.

III. As to the claim of John Mallow for boarding Gamaliel Walker from 1892 to 1898, the facts, as far as we can discover them from the competent evidence, are substantially as follows: Some time prior to 1892 Gamaliel Walker and his wife went to live with John and Laura Mallow, under an arrangement by which Gamaliel Walker was to build an addition to the Mallow house, and furnish a part of the joint family expenses; and this arrangement was carried out until the death of Mrs. Walker in 1892. From that time on Gamaliel Walker continued to live with the Mallows, so far as it appears, without paying board, or furnishing supplies for the family, stating to various persons that the Mallows would be paid for his keeping. John Mallow testifies as to conversations between his wife and her father, and Laura Mallow as to similar conversations between her father and her husband, in which this arrangemet was made quite specific, and the devise of the 40 in controversy in this case to Laura Mallow was referred to as furnishing the compensation for board. The testimony of John and Laura Mallow, respectively, as to the conversation with Gamaliel Walker, is objected to as prohibited under Code, section 4604, because relating to personal transactions or communications with a person deceased; but each witness testifies to statements in conversations between deceased and the other, in the presence of the witness, and in which the witness took no part, and such testimony is competent. *Erusha v. Tomash,* 98 Iowa, 510; *Auchampaugh v. Schmidt,* 77 Iowa, 13. In the face of these direct statements of the witnesses we do not feel justified in excluding what they say. There is some testimony on the part of John Mallow with reference to conversations between himself and Gamaliel Walker which cannot be considered, but we think that from competent evidence it appears that it was the understanding of Gamaliel Walker that the Mallows should receive compensation in some form for his board, and John Mallow

is therefore entitled to be paid out of the estate of Gamaliel
Walker for the reasonable value of the board and care which
the latter received.   As bearing on this question, see, without
further discussion, *Van Sandt v. Cramer,* 60 Iowa, 424;
*Ridler v. Ridler,* 93 Iowa, 347; Id., 103 Iowa, 470; *Mc-
Garvy v. Roods,* 73 Iowa, 363.   It is difficult, under the
evidence to fix any value for the services thus rendered.   Dur-
ing part of the time, undoubtedly, Gamaliel Walker was
quite helpless by reason of old age and sickness, but it does
not appear that this condition existed throughout the entire
six years.   For part of the time no doubt the charge of
$4 per week would be reasonable, but that is more than
appears to have ordinarily paid for board in that neighbor-
hood.   We think that if we allow $3 per week we give all
that the services were reasonably worth, and on this account
John Mallow is entitled to $1,020.   We find no competent
evidence that the estate of Gamaliel Walker is liable for
the board of the grandchildren during that time, nor for
sums of money claimed to have been advanced as charged in
John Mallow's account.   As a credit on this account, the
estate is entitled to the rental value of the 40 acres above
referred to, which we find to have been $65 per year,—in all,
$390,—leaving a balance of $630.   As to the counterclaim
interposed by Gamaliel Walker when this claim was made
against him, after he had left the Mallows, and was residing
with Simon Walker, we do not find that the items are estab-
lished by any competent evidence.   There is much testi-
mony relating to the estate of Gamaliel Walker's financial
affairs during these years, and it is contended in behalf of
the estate that he had considerable money and personal prop-
erty when he lived with the Mallows, and that none of it
remained at the time of his death; but we cannot infer, in
the absence of any evidence, that this money and other per-
sonal property was turned over to either John or Laura Mal-
low, and, in the absence of any direct evidence of payment,

we must hold that there are no payments or offsets to be deducted.

IV. While the conveyance of the land in question from Gamaliel Walker to his son, Simon, was not invalid, as we have already indicated, on the ground of mental incapacity or undue influence, yet inasmuch as Gamaliel Walker had practically no other property from which his debts could be paid, this conveyance was, in point of law invalad as to his creditors. That a conveyance by an insolvent in consideration of future support is void so far as it puts the property of the grantor out of the reach of creditors, is well settled. *Strong v. Lawrence,* 58 Iowa, 55; *Graham v. Rooney,* 42 Iowa, 567; *Woodall v. Kelly,* 85 Ala. 368 (5 South. Rep. 164, 7 Am. St. Rep. 57); *Stanley v. Robbins,* 36 Vt. 422; *Pease v. Shirlock;* 63 Vt. 622 (22 Atl. Rep. 661); *Davidson v. Burke,* 143 Ill. 139 (32 N. E. Rep. 514, 36 Am. St. Rep. 367). It is also well settled that the administrator of an estate may maintain an action against decedent's grantee to set aside a conveyance, if in fraud of decedent's creditors. *Cooley v. Brown,* 30 Iowa, 470; *Parker v. Flagg,* 127 Mass. 28; 1 Woerner, Administration, 630; Wait, Fraudulent Conveyance, sections 112, 113. It is not necessary, in support of such an action, that the creditors have already reduced their claims to judgment. *Prentiss v. Bowden,* 145 N. Y. 342 (40 N. E. Rep. 13). The same principle is applicable to the transfer to Simon of the $400 note of John Mallow to Gamaliel Walker. In short, Simon Walker took the land and this note, which constituted the entire estate of Gamaliel Walker, subject to impeachment on the ground that the transfer was in fraud of the claim of John Mallow for board and care of Gamaliel Walker as above indicated. The conveyance of the land to Simon was, however, on condition that he execute a note to a grandchild of Gamaliel Walker for the payment of $200, and this he

appears to have done. To that extent he has a claim on the property, provided, of course, anything is left after satisfying the debts. It does not follow, however, that the conveyance and transfer to Simon is to be entirely set aside, and the residue of the property, after the payments of these debts and the note to the granddaughter, is to be distributed as property of the estate. As to any such residue, the disposition made by Gamaliel Walker should be sustained, and Simon Walker's right thereto is to be upheld. *McLean v. Weeks,* 61 Me. 277; *Bank v. Burke,* 4 Black, 141. The case will be remanded to the lower court, in order that such disposition be made of the various issues involved as to carry out the conclusions above announced.

As the findings of this court are materially different from those of the tral court, its decree must be REVERSED.