SANDERS, Respondent, v. SANDERS (Mahoney, Intervener), Appellant.

(234 N. W. 601.)

(File No. 7008. Opinion filed January 30, 1931.)

*Conway, Feyder & Conway* and *Bailey & Voorhees,* all of Sioux Falls, for Appellant.

*Danforth & Barron,* of Sioux Falls, for Respondent:

*Mundt & Mundt,* of Sioux Falls, for Sanders.

BROWN, J. Kate O'Brien, a maiden aunt of plaintiff, died January 13, 1928, leaving a will in which the intervener was named as residuary legatee. Miss O'Brien was over seventy-eight years of age at the time of her death and for a number of years prior to her death had resided in the family of plaintiff in Sioux Falls. This family was composed of May Sanders and her sister Sadie, both of whom were unmarried and taught school, their brother Joseph Sanders, who is executor of the will, and Mrs. Sanders, the mother of these three. It appears that plaintiff was considered the head of the household during this period, and the household expenses were made up by Joseph paying $50 a month and the two girls $40 a month each. During the later years of her life Mrs. Sanders

was unable to do any work and she died on January 12, 1920. The evidence on the part of plaintiff tends to show that May and Sadie, with the assistance of a woman who occasionally was employed to help, took care of all the household work, and that, while Miss O'Brien occasionally did some sweeping and other light work, for the most part she was treated as an elderly member of the household who was unable to do much in the way of household work and of whom little in that line was expected.

After Miss O'Brien's death and the probate of her will plaintiff filed a claim against her estate for room, board, and care at the rate of $40 a month for eight months during the years 1917 and 1918 and for eighty-seven months from the year 1920 until Miss O'Brien's death in 1927. The claim for the eight months during 1917 and 1918 was disallowed by the court because barred by the statute of limitations. The claim for the eighty-seven months was disallowed by the county court, and this action was brought in the circuit court to recover on the claim for those eighty-seven months. Defendant's answer was a general denial of the rendition of the services and the liability of the estate therefor, and the intervener, as residuary legatee, set forth his rights under the will and denied the validity of plaintiff's claim. The case was tried to a jury which found a verdict for plaintiff for $2,175 which was at the rate of $25 a month, with interest from February 1, 1928, and, from a judgment on this verdict and an order denying a new trial, the intervener appeals.

The court instructed the jury that, if a family relationship existed between Miss O'Brien and plaintiff and the other members of the family, the law would imply no contract from the mere furnishing of board, room, and services by plaintiff and their acceptance by Miss O'Brien, but, if they should find that a family relationship did not exist, it would not be necessary to find that an agreement existed between plaintiff and deceased, and deceased was to pay for the services plaintiff claimed to have been rendered, for in that case, if services were rendered by plaintiff and accepted by deceased, then the law implies an agreement to pay for such services, and in that event plaintiff would be entitled to recover the reasonable value of such services, deducting therefrom the value of services, if, any, performed by deceased for plaintiff. The instructions were not excepted to by either party. We think there

was sufficient evidence to justify the jury in finding that a family relationship in a legal sense did not exist between Miss O'Brien and plaintiff and the other members of the family and also that deceased intended to pay plaintiff for her board and room during the period that she stayed in plaintiff's family from the time she came there in the fall of 1920 until her death. Katherine Burrett testified that at a time after Miss O'Brien returned to the Sanders home in 1920 she had conversations with her in which plaintiff was present and in which Miss O'Brien talked about paying for her board and remarked that she was paying board because she wanted to be independent, and that on one occasion when Miss O'Brien visited at witness' house she said she was going to pay plaintiff $40 a month when she sold her three houses, that being all the property she had. A number of other witnesses testified to similar statements being made by Miss O'Brien on occasions when plaintiff was not present, and Julia Kellar testified that on an occasion in the spring of 1921, when she and other members of the Sanders family, including plaintiff, were conversing in the living room, Miss O'Brien said, "Well, I don't have to work, I am paying my board here." This witness also testified that on the last Thanksgiving Day that Miss O'Brien was living (which would be in 1927) she told her that she would have to make it right with plaintiff because she had never paid her any money. While there was contradictory testimony introduced on behalf of the intervener, there was sufficient evidence from which the jury could reasonably find that an agreement existed between Miss O'Brien and plaintiff whereby Miss O'Brien was to pay for her board and room during the time she stayed in the Sanders family from 1920 until her death. One witness for intervener testified to conversations with Miss O'Brien in which she said she was more than paying for her room and board with the work she was doing. This in itself was a recognition of her liability to pay for room and board, and that she did not look upon herself as a member of the family in a sense that she was entitled to room and board without paying for it. In Re Newson's Estate, 206 Iowa, 514, 219 N. W. 305, 307, it is said that the contract between a person and one living in her family to pay for services rendered does not have to be shown by formality in proposing and accepting the terms. "The existence of the mutual understanding, the proposal, and

acceptance may be implied from conduct and circumstances. These may be shown by circumstantial evidence, or by the admission of the party to be charged. [Citing cases.] Acceptance may be shown by conduct or by performance communicated to the promisor."

Intervener assigns a number of errors on the court's rulings as to evidence. We have carefully examined them all and find no prejudicial error. The only assignment on this branch of the case of sufficient importance to merit discussion was the overruling of intervener's objection to the question asked plaintiff if she had ever received any payment on the account, which was objected to on the ground that plaintiff was barred from testifying as to this matter by the provisions of section 2717 of the Code. The objection was overruled, and she answered, "No." It is generally held that the statute forbidding a party to testify as to transactions with a decedent prohibit testimony as to payment or nonpayment of money by or to decedent. 40 Cyc. 2320. A witness testifies to a personal transaction no less when he denies it than when he affirms it. In re Will of Winslow, 146 Iowa, 67, 124 N. W. 895, Ann. Cas. 1912B, 663. In a suit by plaintiff for board and services rendered to his deceased mother-in-law who had lived in plaintiff's family during her declining years, an agreement for payment having been established by proof of declarations of decedent during a period of nine years prior to her death, it was held that plaintiff was incompetent to testify to nonpayment. The court said: "The payment was a personal transaction between the plaintiff and the intestate, which, under Code, § 3639, cannot be shown by plaintiff's own testimony. But there does not appear to have been any issue in the case involving payment to plaintiff, nor did defendant offer any evidence tending to show payment. In order to establish his claim the plaintiff was not required to prove that it had not been paid. He, therefore, could not have been prejudiced by excluding the evidence offered." Van Sandt v. Cramer, 60 Iowa, 424, 15 N. W. 259, 260. That is exactly the situation that exists in the instant case. The court may have ruled erroneously in permitting plaintiff to testify that she had not been paid anything on the account, but there was no issue in the case involving payment. The intervener's answer alleged that the services, if rendered, were worth not to exceed $25 a month, but there was no claim that any part thereof had been paid, and payment is an affirmative defense.

604

Commercial Inv. Trust, Inc., v. Wesling, 53 S. D. 337, 220 N. W. 855; Gans v. Beasley, 4 N. D. 140, 59 N. W. 714; Robertson Lumber Co. v. State Bank of Edinburgh, 14 N. D. 511, 105 N. W. 719; Peart v. Schwenker, 200 Wis. 200, 227 N. W. 945; Renne's Will, 194 Iowa, 938, 189 N. W. 776; Palmer v. Lodge, 7 Boyce (Del.) 537, 109 A. 125. The error of the court, therefore, in permitting plaintiff to testify to nonpayment, was error without prejudice.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and BURCH, J., concur.

CAMPBELL, J., concurs in the result.

ROBERTS, J., not participating.